Alberto RODRIGUEZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–95–01488–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

April 30, 1998.

Henry K. Oncken, Houston, for Appellant.

Calvin Hartmann, Houston, for Appellee.

Before LEE, AMIDEI and ANDERSON, JJ.

## OPINION

ANDERSON, Justice.

Alberto Rodriguez [Rodriguez] appeals his murder conviction. The jury found Rodriguez guilty and assessed punishment at confinement for life in the Texas Department of Criminal Justice, Institutional Division.

Rodriguez appeals on two points of error. First, Rodriguez argues the trial court erred in admitting his typewritten confession into evidence because he had made an earlier oral statement without having first received warnings under § 51.09(b)(1) of the Texas Family Code, and this defective procedure involving the oral statement tainted, and rendered inadmissible, his subsequent written confession.[1] Second, Rodriguez argues it was error to admit the statement of witness Juan Rodriguez into evidence for impeachment purposes without a limiting instruction. We affirm.

Rodriguez was a 16 year old high school student at the time he and his friend David Sosa Jr. [Sosa] murdered Luis Lopez [Lopez]. All three attended the birthday party of a friend. At trial, testimony showed Rodriguez and Sosa got into a dispute with Lopez. During the altercation, Rodriguez shot Lopez in the stomach while Sosa shot Lopez in the head at approximately the same time. Rodriguez and Sosa then fled the scene.

Rodriguez was arrested at school two days later for allegedly threatening another student. He was taken to the Harris County Sheriff's Department. After arriving at the Sheriff's Department, Rodriguez was given his juvenile warnings by Officer William Taber [Taber].[2] After Officer Taber discussed with Rodriguez some statements made by other witnesses at the party, Rodriguez orally confessed to his involvement in Lopez's murder. Thereafter, Rodriguez was taken before Magistrate Carrier who, outside the presence of any law enforcement officers, gave him warnings consistent with

---

**1.** While Rodriguez does not specifically challenge the admission of his written statement based on the Due Process Clause, this appears to be the basis of his argument. Rodriguez relies heavily on a Court of Criminal Appeals opinion challenging the admission of the written statement of a juvenile under the Due Process Clause. *See Griffin v. State*, 765 S.W.2d 422, 423 (Tex.Crim.App. 1989). Furthermore, while Rodriguez specifically points to section 51.09(b)(1) of the Texas Family Code, his appeal is not based on any failure to comply with the code rendering his written statement inadmissible. Therefore, we will treat his challenge as one, like *Griffin*, based on the Due Process Clause.

**2.** At the suppression hearing, Officer Taber read the warnings he testified to administering to Rodriguez. He testified he told Rodriguez "You may remain silent, not make any statement at all, any statement you make may be used in evidence against you, you have the right to have an attorney present to advise you either prior to any questioning or during any questioning, if you're unable to employ an attorney, you have the right to have an attorney appointed to counsel with you prior to or during any interviews with peace officers or attorneys representing the State, you have the right to terminate the interview at any time. If you're fifteen years of age or older at the time of the violation of a law of the grade of a felony the juvenile court may waive its jurisdiction, you may be tried as an adult. Additionally, you may be sentenced to commitment in the Texas Youth Commission with a transfer to the Texas Department of Corrections for a term not to exceed thirty years if you're found to have engaged in delinquent conduct alleged in a petition approved by a Grand Jury which alleges the commission of one or more of the felony offenses, to wit: murder, capital murder, aggravated kidnapping, aggravated sexual assault, deadly assault on a law enforcement officer, correction's officer or court participant, or criminal attempt at the offense of attempted capital murder."

§ 51.09(b)(1) of the Texas Family Code. Rodriguez was returned to the Sheriff's Department where a written statement was prepared. He initialed each paragraph of the statement but did not sign it at the Sheriff's Department. Rodriguez was returned to Magistrate Carrier where he was once again given his warnings. He then signed the written statement before the magistrate, a procedure required by § 51.09(b)(1)(G) for the admissibility of a written statement of a juvenile.

Rodriguez moved to suppress the written statement. At the suppression hearing, Rodriguez claimed Officer Taber kicked and punched him in order to obtain his oral confession and later his written confession. He claimed another officer watched as Officer Taber assaulted him. He also claimed the confession was untrue. Rodriguez admitted he did not have any visible injuries. He also admitted he never told any one, until his trial neared, that Officer Taber physically assaulted him while another Officer watched. Jose Esparza, present for questioning in the same murder, was at the station at the same time Rodriguez was there. He and Rodriguez were allowed to speak to each other at some point during their time at the Harris County Sheriff's Department. Esparza testified he too was assaulted and heard Rodriguez being assaulted through a wall of an interrogation room. He, like Rodriguez, had no physical injuries, and failed to tell anyone about the alleged police brutality until the suppression hearing. Thereafter, the trial court denied suppression of Rodriguez's written statement.

### Standard of Review

In 1996, the Texas Court of Criminal Appeals described the standard of review applicable to the denial of a motion to suppress evidence. *See DuBose v. State,* 915 S.W.2d 493, 496 (Tex.Crim.App.1996). The *DuBose* Court stated a court of appeals analyzing a trial court's denial of a motion to suppress evidence must be deferential to the trial court's judgment, not only as to the historical facts, but also as to the legal conclusions to be drawn from the historical facts—at least so long as it appears the trial court has applied the correct standard of law to those historical facts. *See id.* at 497–98. They should reverse the trial court's decision only for an abuse of discretion, occurring when it appears the trial court applied an erroneous legal standard, or when no reasonable view of the record could support the trial court's conclusion under the correct law and the facts viewed in the light most favorable to its legal conclusion. *See id.*

■■■ The Court of Criminal Appeals has now expressly overruled *DuBose. See Guzman v. State,* 955 S.W.2d 85, 90 (Tex.Crim. App.1997). In *Guzman,* the court held that courts of appeals should afford almost total deference to a trial court's determination of the historical facts that the record supports. *See id.* at 89. Furthermore, the court of appeals should afford the same amount of deference to trial court's rulings on application of law to fact questions, referred to as mixed questions of law and fact, if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor. *See id.* However, de novo review of these mixed questions of law and fact may be applied where the resolution thereof is not restricted to an evaluation of credibility and demeanor. *See id.* Because we believe resolution of the issue of the voluntariness of Rodriguez's written statement, and thus its admissibility, is not restricted to the trial court's evaluation of credibility and demeanor, de novo review of the trial court's decision to admit the written statement is appropriate.[3]

### Admissibility of Written Juvenile Confession

In point of error one, Rodriguez argues his written confession was erroneously entered into evidence because it was tainted by a prior oral statement. The admissibility of a written statement made by a juvenile in detention is measured by § 51.09(b)(1). *See*

---

**3.** The nature of the inquiry involving the voluntariness of a confession is a legal question. Assessments of credibility and demeanor are not crucial to the proper resolution of the ultimate issue of voluntariness. *See Miller v. Fenton,* 474 U.S. 104, 115–16, 106 S.Ct. 445, 452–53, 88 L.Ed.2d 405 (1985).

TEX. FAM.CODE ANN. § 51.09 (Vernon Supp. 1996). Subsection (b) provides that statements of juveniles made while in a detention facility or other place of confinement or custody are admissible in evidence in any future proceeding concerning the matter about which the statement was made if it is made in writing and if sometime prior to making the statement, the warnings specified in § 51.09(b)(1)(A)-(F) were given by a magistrate.[4]

In a factually similar case, the Texas Court of Criminal Appeals held that the admissibility of an oral statement does not affect the admissibility of a subsequent written statement, provided the State has made an adequate showing of voluntariness of the written statement, and such evidence is not rebutted by the defendant's testimony that the oral statement produced or caused the written statement. *See Griffin v. State,* 765 S.W.2d 422, 430 (Tex.Crim.App.1989). *Griffin* involved a sixteen year old girl convicted of being a party to murder. *See id.* at 423. Police took her to the station so she could tell what she knew about a recent murder. *See id.* at 424. After facts implicating her in the murder became apparent, she was arrested and given her *Miranda*[5] warnings. *See id.* She then orally confessed to her part in the murder. *See id.* Only after making her oral confession was she transported to a magistrate who gave her the section 51.09(b)(1) warnings. *See id.* at 424-25. The juvenile then gave a written statement implicating herself as a party to the murder. *See id.* at 425. She was then taken to a different magistrate who again gave her the § 51.09(b)(1) warnings. *See id.* The girl then signed the written statement in the presence of the magistrate. *See id.* The trial court held that the State had sustained its burden of proving her subsequent written confession was voluntary under the Due Process Clause, and the *Griffin* court affirmed that judgment. *See id.* at 431.

4. The warnings specified in § 51.09(b)(1)(A)-(F) are virtually identical to those administered by Officer Taber upon Rodriguez's arrival at the Harris County Sheriff's Department. See note 2, ante.

5. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

The *Griffin* Court began its analysis which resulted in affirming the admissibility of the second written confession by quoting from *United States v. Bayer,* 331 U.S. 532, 67 S.Ct. 1394, 91 L.Ed. 1654 (1947) wherein Justice Jackson described the potential interplay between an unwarned oral confession and a second warned confession and addressed the question whether the first compromised the second.

> Of course, after an accused has once let the cat out of the bag by confessing no matter what the inducement, he is never thereafter free of the psychological and practical disadvantages of having confessed. He can never get the cat back in the bag. The secret is out for good. In such a sense, a later confession always may be looked upon as fruit of the first. But this Court has never gone so far as to hold that making a confession under circumstances which preclude its use, perpetually disables the confessor from making a usable one after those conditions have been removed.

331 U.S. at 540-41, 67 S.Ct. at 1398. In *Griffin,* the court severely restricted application of the "cat out of the bag" argument that the existence of an inadmissible oral confession followed by an informed and voluntary written confession always compromised the voluntariness of that subsequent informed waiver. The second statement should ordinarily be viewed as an independent act of free will. *See Griffin,* 765 S.W.2d at 429 (citing *Oregon v. Elstad,* 470 U.S. 298, 311, 105 S.Ct. 1285, 1294, 84 L.Ed.2d 222 (1985)). Once properly warned, the suspect is free to exercise his own volition in deciding whether or not to make a statement to authorities. *See Elstad,* 470 U.S. at 308-10, 105 S.Ct. at 1293. The *Griffin* court held the appropriate test for the voluntariness of the waiver of the accused's Fifth Amendment rights is the same as it is for determining coercion in a due process inquiry,[6] as present in *Griffin*

6. In *Miller v. Fenton,* the Supreme Court stated that it has continued to measure confessions against the requirements of due process. 474 U.S. at 110, 106 S.Ct. at 449.

and here. *See Griffin,* 765 S.W.2d at 429. Voluntariness in either context is to be measured according to the totality of the circumstances. *See id.* Thus, in *Griffin,* the court held that where the State establishes voluntariness of the subsequent written statement by proof of proper warnings, and the apparent willingness of the defendant, under the totality of the circumstances to waive her rights following those warnings, the State satisfies its burden on that issue. *See id.* at 430. The State need not prove the prior oral statement was admissible, absent evidence the oral statement produced or caused the later written statement. *See id.*

The *Griffin* court further noted that the mere possibility that the unwarned oral disclosure of the crime produced a psychological disadvantage would not, absent some evidentiary corroboration, be sufficient to rebut the State's otherwise adequate showing of voluntariness. *See id.* In sum, there is no presumption that the earlier confession compelled the defendant to again confess despite a resolve to remain silent.. Such speculation has been prohibited for federal due process purposes by the Supreme Court, and appellant has not advanced any arguments on appeal contending that we should not adhere to that standard. *See Elstad,* 470 U.S. at 312–16, 105 S.Ct. at 1295–96.

Alberto Rodriguez argues that the mere existence of his oral confession given without first appearing before a magistrate taints his subsequent written statement and renders it inadmissible at trial. Specifically, he contends that "By the time of his second appearance before the magistrate, he might well have felt he had nothing to lose by formally signing the statement before the magistrate." We disagree. The rationale of *Griffin,* and its federal predecessors *Bayer* and *Elstad,* is that there is no presumption mandating such

an inferential leap [7]. Rather there must be evidence in the record that Rodriguez would not have given the written confession but for the earlier one. *See id.* Indeed, the *Griffin* court affirmed the trial court's finding that the subsequent written confession was voluntary under the Due Process Clause because, under the totality of the circumstances test there was insufficient evidence that appellant's prior oral statement played an actual role in her volitional process leading her to sign the subsequent written confession. *See id.* at 431.

■ Here Rodriguez alleges both his written and oral statements were involuntary. However, there is no evidence, other than Rodriguez's own self-serving testimony and that of his friend Jose Esparza, indicating Rodriguez's subsequent written confession was involuntary. Rodriguez received Fifth Amendment warnings from Officer Taber advising him of his right to remain silent prior to making his oral confession. Rodriguez also received the additional measures of protection through the § 51.09(b)(1) warnings issued by Magistrate Carrier. The magistrate testified she read each warning, stopped to ask if Rodriguez understood each warning, and again explained each warning. Rodriguez indicated he understood these warnings. Magistrate Carrier noted on the bottom of the warnings verification form that Rodriguez "appeared relaxed and alert." The only question Respondent had was "could he get a lethal injection." Even though Rodriguez talked to Magistrate Carrier alone, he never told her he had been assaulted or coerced by Officer Taber. Additionally, Rodriguez had no physical signs of abuse, but he nevertheless testified at the suppression hearing that Officer Taber beat him at the station.[8] However, this record

---

7. In *Elstad,* Justice O'Connor wrote "This Court has never held that the psychological impact of a voluntary [but unwarned] disclosure of a guilty secret qualifies as state compulsion or compromises the voluntariness of a subsequent informed waiver." 470 U.S. at 312, 105 S.Ct. at 1294. The admissibility of the subsequent statement turns in these circumstances solely on whether it is knowingly and voluntarily made. *See id.* at 308–10, 105 S.Ct. at 1293. For this inquiry, the fact finder must examine the surrounding circumstances and the entire course of police conduct with respect to the suspect in evaluating the voluntariness of his statements. *See id.* at 318–20, 105 S.Ct. at 1298.

8. The trial court found, at the close of the suppression hearing, that the statements by Rodriguez regarding threats or use of force by the detectives to get him to sign his written confession were not credible. Under *Guzman,* we must afford almost total deference to the trial court's determination of the historical facts the record supports. *See* 955 S.W.2d at 89.

contains no indication the written statement would not have been made but for the oral confession. Thus, there is no evidence to support appellant's argument that the oral confession, the admissibility of which is controlled by § 51.09(b)(2), tainted the subsequent written one. Rodriguez received § 51.09(b)(1) warnings from Magistrate Carrier twice before he signed his written confession. *The warnings clearly stated he did not have to sign the confession.* Thus, the State's adequate showing Rodriguez's written statement was voluntary was unrebutted.

■ Rodriguez also argues that in effect he had already signed the confession outside the magistrate's presence by virtue of his initials near each paragraph. However, the initials of a juvenile on a written statement made in front of a police officer do not constitute a signature for purposes of making that statement admissible at trial. See section 51.09(b)(1)(G). Officer Wedgeworth who took the statement testified he asked Rodriguez to put his initials by each paragraph merely to show it accurately reflected the statements Rodriguez had made. Admissibility of this written statement required actual execution of the statement before a magistrate, and without the presence of any law enforcement officer or prosecuting attorney. *See id.* Indeed, the statement would have been inadmissible, under section 51.09, if it had not been signed by Rodriguez in front of a magistrate. Again, when Rodriguez went before Magistrate Carrier, she advised him that he did not have to sign the confession. We are not persuaded, in the absence of any evidence to the contrary, that a causal connection exists between the fact that Rodriguez first initialed the statement, and then later signed it, after being warned that he was not required to do so. Any such connection is speculative and attenuated at best. Weighing this evidence under the totality of the circumstances test, we hold the State satisfied its burden of proof with sufficient evidence demonstrating Rodriguez's written confession was voluntary. Accordingly, it was proper for the trial court to admit it into evidence. Point of error one is overruled.

## Limiting Instructions For

### Statements Introduced for Impeachment Purposes

■ In Rodriguez's second point of error, he argues the trial court erred in admitting the hearsay statement of his brother, Juan Rodriguez. Rodriguez appears to argue the admission of the statement was error because it was not limited to use for impeachment purposes only.

During it's case-in-chief, the State called Juan Rodriguez. While testifying, he denied any knowledge of the offense despite earlier discussions to the contrary with Officer Dear. The State then called Officer Dear who testified he had interviewed Juan and taken a statement relating Juan's knowledge of the offense. Juan's statement was then introduced into evidence. Appellant objected to the evidence as hearsay, but no limiting instruction was requested at that time. The instructions given by the court in the jury charge however, provided the following:

> You are instructed that a witness may be impeached by showing that he or she had made other and different statements out of court from those made before you in the trial. Such impeachment evidence may be considered by you to aid you in determining (if it does so) the weight, if any, to be given the testimony of the witness at trial and his credibility; but such impeaching evidence, if any, is not to be considered as tending to establish the alleged guilt of the defendant in this case. Therefore, you are further instructed that the written statement of the witness, Juan Rodriguez, was admitted for the purpose of impeaching the testimony of the witness, Juan Rodriguez, if you find that it does impeach him, and you cannot consider the written statement of Juan Rodriguez as any evidence whatsoever of the guilt of the defendant.

■ In a recent case, the Texas Court of Criminal Appeals held it was error to admit evidence for a limited purpose and refuse to give a limiting instruction at that time, *if one is requested. See Rankin v. State,* No. 0374–94, 1996 WL 165014, at 5, —— S.W.2d ——, —— (Tex.Crim.App. April

10, 1996). However, the court specifically noted this rule applies when a limiting instruction is requested at the time the evidence is admitted. *See id.* Here, no limiting instruction was requested at the time Juan Rodriguez's statement was entered into evidence. A party opposing evidence has the burden of objecting *and requesting* the limiting instruction at the introduction of the evidence. *Garcia v. State,* 887 S.W.2d 862, 878 (Tex.Crim.App.1994). Because appellant did not request a limiting instruction at the time the impeaching evidence was introduced, it would not have been error for the trial court to fail to charge the jury with a limiting instruction regarding Juan's inconsistent statement. *See id.* at 879; *see also* TEX.R.CRIM. EVID. 105 (in the absence of a request for a limiting instruction, the court's action in admitting such evidence without limitation shall not be a ground for complaint on appeal). Nevertheless, the trial court did include a limiting instruction in the jury charge. The limiting instruction contained in the jury charge was sufficient to prevent Juan Rodriguez's statement from being used for purposes other than impeachment. Because appellant failed to request a limiting instruction regarding this impeaching evidence at the time of its introduction, and in fact received such an instruction in the jury charge, he has no basis for complaining on appeal about the trial court's actions involving such evidence. Point of error two is overruled.

All of Rodriguez's points of error are overruled. Accordingly, we affirm the judgment of the trial court.