

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NO. WR-58,474-02

### Ex parte ALBERTO RODRIGUEZ, Applicant

## ON APPLICATION FOR A WRIT OF HABEAS CORPUS
### CAUSE NO. 700071 IN THE 178TH DISTRICT COURT
### HARRIS COUNTY

KELLER, P.J., delivered the opinion of the Court in which MEYERS, KEASLER, HERVEY, RICHARDSON, YEARY and NEWELL, JJ., joined. JOHNSON, J., concurred. ALCALA, J., did not participate.

Applicant was a juvenile at the time he committed the offense in this case. He was subsequently certified to stand trial as an adult and transferred to district court, where he was later convicted. He claims that he was not properly served with a summons to the transfer hearing in the juvenile court. He further claims that, as a consequence of that failure, the juvenile court did not have jurisdiction to transfer him and the district court did not have jurisdiction to try him. We filed and set this application "to determine whether the district court lacked jurisdiction and whether this

claim should be barred under the doctrine of laches."[1]  We conclude that the record does not affirmatively establish the absence of jurisdiction, and consequently, we deny relief.

## I. BACKGROUND

We have no court reporter's record from any of the juvenile proceedings.  Therefore, with respect to those proceedings, our recitation of facts is derived solely from the clerk's record in the juvenile case.  Although there is some evidence that a court reporter may have recorded juvenile proceedings relating to applicant on August 1 and August 4, 1995, we cannot definitively ascertain whether those proceedings were recorded.[2]  With that caveat in mind, we outline the relevant procedural facts of this case.

On or about March 25, 1995, applicant shot and killed Alexander Lopez.  Applicant was sixteen years of age at the time.  As a result of that incident, the State filed a juvenile-delinquency petition.  No one disputes that applicant was properly served with a summons and appeared for the initial hearing with respect to that petition.[3]

On April 26, the State filed a motion to waive jurisdiction in the juvenile court and a petition

---

[1]  *Ex parte Rodriguez*, No. WR-58,474-02, 2014 Tex. Crim. App. Unpub. LEXIS 970 (Tex. Crim. App. September 17, 2014) (not designated for publication).

[2]  In an affidavit, Rita Anderson stated that the Auditor's Office database revealed that Marilee Anderson was paid for court-reporter services in the 315th District Court of Harris County, Texas, on August 1, 1995, and August 4, 1995.  Database entries showing the payments are included in the habeas record.  In an affidavit, Marilee Anderson stated that she could not locate anything that would indicate whether she was the court reporter who reported applicant's juvenile proceedings on those dates and she had no independent recollection on the matter.  Applicant's attorney from the transfer hearing also provided an affidavit stating that she had no recollection of having represented applicant, no longer possessed the file, and did not recall whether she ever obtained a copy of the court reporter's record in the proceedings.

[3]  Applicant was served with the summons on April 7 and appeared in accordance with that summons on April 13.  The case was then reset for April 27.

to certify applicant to be tried as an adult. The next day, the case was reset for magistrate warnings to be given to applicant on May 4 and for a transfer hearing to be held on June 7. Applicant received magistrate warnings on May 4, but the transfer hearing was subsequently reset to July 27. On July 27, both parties announced "ready," and the parties and witnesses were sworn to return at 10:00 a.m. on August 1 for "trial."

On August 1, the parties appeared, and the case was reset for August 4. Also on August 1, applicant was served with a summons for the transfer hearing. The summons stated that the hearing would be on August 1, 1995, at 9:30 a.m. The return on the summons shows that applicant was served at the courthouse on August 1, 1995, at 11:45 a.m., a little more than two hours after the summons specified that the hearing would start. The August 1 summons does not refer to the August 4 hearing, and the clerk's record contains no summons listing an August 4 hearing date.

On August 4, the parties appeared and tried the issue of whether applicant should be transferred to adult court. After hearing testimony and receiving exhibit evidence, the juvenile court granted the State's motion to waive jurisdiction and transferred applicant to district court. The docket entries for August 4 also note that applicant was sworn and admonished and that a State's motion to amend the petition to show a slight name change was granted. In addition, the August 4 docket entries contain the notations, "Any further notice waived by Resp." and "Right to Appeal."

Although applicant had the right to immediately appeal the transfer decision,[4] there is no indication that he ever did so. Applicant was subsequently tried as an adult in district court,

---

[4] *See Moon v. State*, 451 S.W.3d 28, 39-40 (Tex. Crim. App. 2014) (observing that, prior to January 1, 1996, a juvenile could immediately appeal a juvenile court's waiver of jurisdiction, but effective January 1, 1996, appeal of that decision could occur only after the criminal conviction). *See also* Acts 2015, 84th Leg., S.B. 888, eff. September 1, 2015 (making a juvenile court's waiver of jurisdiction immediately appealable).

convicted of murder, and sentenced to life in prison. He appealed his conviction but did not raise any claim regarding the juvenile court's transfer decision.[5] The court of appeals affirmed the judgment.[6] Applicant did not file a petition for discretionary review, and mandate issued on June 26, 1998.

On November 24, 2003, applicant filed his first habeas application. In that application, he claimed that the district court lacked jurisdiction because the juvenile court lacked jurisdiction to transfer due to a failure to properly serve him with a summons to the transfer hearing. The habeas court made findings consistent with the facts recited above and concluded that applicant was not entitled to relief because he received the summons in accordance with the applicable statutes.[7] Applicant also made other claims, including the claim that his appellate attorney failed to timely inform him of the court of appeals's decision so as to allow him to file a petition for discretionary review. On April 7, 2004, we granted relief on that latter claim—giving applicant the opportunity to file an out-of-time petition for discretionary review.[8] He never filed one.

On May 18, 2011, applicant filed his second (current) habeas application. He raises, among

---

[5] *Rodriguez v. State*, 968 S.W.2d 554 (Tex. App.–Houston [14th Dist.] 1998, no pet.).

[6] *Id.*

[7] Findings and Conclusions, dated February 20, 2004, Findings 5-6 and Conclusion 2.

[8] Because applicant's first application was resolved solely on the out-of-time-PDR claim, there was no final disposition of a claim that challenged the conviction, so the current application is not barred under TEX. CODE CRIM. PROC. art. 11.07 § 4. *See Ex parte Torres*, 943 S.W.2d 469, 474 (Tex. Crim. App. 1997) (because out-of-time appeal was sole basis for disposing of prior application, there was no final disposition of other claims raised therein, and those other claims were not barred by § 4); *Ex parte Santana*, 227 S.W.3d 700, 703-04 (Tex. Crim. App. 2007) (request for out-of-time appeal does not constitute a challenge to the conviction for purpose of § 4); *Ex parte McPherson*, 32 S.W.3d 860, 861 (Tex. Crim. App. 2000) (same). *See also Ex parte Wilson*, 956 S.W.3d 25 (Tex. Crim. App. 1997).

other things, the jurisdictional claim that he raised in his first application. The habeas court in the current proceedings made findings consistent with the facts recited above[9] but concluded that applicant was entitled to relief because the summons failed to comply with the applicable statute.[10] In one of its conclusions, the habeas court stated that "the record does not show positively or affirmatively that a valid, or timely summons was ever served upon any party the court deemed necessary to the proceeding pursuant to the prevailing mandatory notice requirements."[11]

## II. ANALYSIS

### A. Lack of Service Versus Defect in Service

Juvenile transfer proceedings are governed by the Family Code.[12] Family Code § 54.02(b) provides that the notice requirements of certain other sections of the Family Code must be satisfied and that "the summons must state that the hearing is for the purpose of considering discretionary transfer to criminal court."[13] Some of the notice requirements contained in the referenced sections of the Family Code are: (1) a summons must be served on the juvenile and various other interested

---

[9] Findings and Conclusions, dated June 23, 2014, Ground for Relief 1, Findings of Fact 1-11. Finding 3 states that the waiver of jurisdiction hearing scheduled for August 1 "did not take place." We construe this to be a finding, supported by the record, that there was no transfer hearing at that time. We do not construe this finding to mean that no hearing of any sort took place on August 1. A finding that no hearing of any sort took place would not be supported by the record.

[10] *Id.*, Conclusion of Law 6. The habeas judge who made findings and conclusions in connection with the second application was not the judge who made findings and conclusions in connection with the first application.

[11] *Id.*, Conclusion of Law 4.

[12] *See* TEX. FAM. CODE § 54.02 (Vernon 1986).

[13] *Id.* § 54.02(b) (requiring that petition and notice requirements of §§ 53.04, 53.05, 53.06, and 53.07 be satisfied).

persons,[14] (2) the summons "must require the persons served to appear before the court at the time set to answer the allegations of the petition,"[15] and (3) the summons must be personally served at least two days before the transfer hearing if the person is in Texas and can be found.[16] Family Code § 53.06(e) further provides, "A party, other than the juvenile, may waive service of summons by written stipulation or by voluntary appearance at the hearing."[17]

This Court and the Texas Supreme Court have held that the failure to comply with § 54.02(b) deprives the juvenile court of jurisdiction to transfer the case.[18] Referring to § 53.06(e), we and our sister court have also held that the juvenile cannot waive the service of the summons for the transfer hearing, even if the juvenile attends the transfer hearing.[19] These holdings are in accordance with the common-law rule that a minor does not possess the legal capacity to waive service of summons, nor can anyone waive it for him.[20]

While it is clear that a juvenile cannot waive service of the summons, the question that arises in this case is whether a juvenile may waive a defect in the service of the summons. Applicant

---

[14] *Id.* § 53.06(a) (requiring service on juvenile, his parent (or guardian or custodian), his guardian ad litem, and "any other person who appears to the court to be a proper or necessary party to the proceeding").

[15] *Id.* § 53.06(b).

[16] *Id.* § 53.07(a).

[17] *Id.* § 53.06(e).

[18] *Grayless v. State*, 567 S.W.2d 216, 219 (Tex. Crim. App. 1978); *In re D.W.M.*, 562 S.W.2d 851, 852 (Tex. 1978).

[19] *Grayless*, 567 S.W.2d at 219-20; *D.W.M.*, 562 S.W.2d at 853; *In re W.L.C.*, 562 S.W.2d 454, 455 (Tex. 1978).

[20] *D.W.M.*, 562 S.W.2d at 853; *W.L.C.*, 562 S.W.2d at 455; *Johnson v. State*, 551 S.W.2d 379, 381 & n.3 (Tex. Crim. App. 1977).

was personally served with a summons for a transfer hearing, but the timing of that service, in combination with the hearing time and date listed on the summons, rendered the service defective. Several courts of appeals have held that, once a juvenile has been properly served with a summons for a transfer hearing, the case may be continued to a later date without issuing a new summons.[21] Had the summons in this case been served on applicant on July 29, the parties could have appeared and reset the case for August 1 under the rationale of those court-of-appeals decisions. But the summons was served on August 1, which violated the requirement that the summons be served at least two days in advance of the hearing date specified on the summons. And the summons was not revised to reflect an August 4 hearing date, which might also have cured any defect in the summons. So the question is whether the juvenile may waive the defect in the summons, either by waiving the failure to receive at least two days advance notice of the hearing listed in the summons or by waiving the failure of the summons to specify the correct date and time for the hearing that actually took place.

Under Family Code § 51.09, a juvenile may waive any right granted under the Family Code or any other law in juvenile proceedings "[u]nless contrary intent clearly appears elsewhere" in Title 3 of the Family Code.[22] For a waiver under § 51.09 to be valid, the following conditions must be met:

---

[21] *In re C.C.G.*, 805 S.W.2d 10, 12-13 (Tex. App.–Tyler 1991, writ denied); *In re R.M.*, 648 S.W.2d 406, 407 (Tex. App. –San Antonio 1983, no writ); *In the Matter of B.Y.*, 585 S.W.2d 349, 351 (Tex. App.–El Paso 1979, no writ).

[22] TEX. FAM. CODE § 51.09(a) (Vernon 1986) ("Unless a contrary intent clearly appears elsewhere in this title, any right granted to a child by this title or by the constitution or laws of this state or the United States may be waived in proceedings under this title if . . . ."). *See also* TEX. FAM. CODE § 51.09 (current).

(1)     the waiver is made by the child and the attorney for the child;

(2)     the child and the attorney waiving the right are informed of and understand the right and the possible consequences of waiving it;

(3)     the waiver is voluntary;  and

(4)     the waiver is made in writing or in court proceedings that are recorded.[23]

In one case, we recognized the possibility that a defect in the summons for a transfer hearing may be waivable under § 51.09, but we did not resolve the question.[24]  Two courts of appeals have indicated that a defect in the summons might be waivable under § 51.09.[25]

In construing a statute, we give effect to the plain meaning of its language unless the language is ambiguous or the plain meaning leads to absurd results that the legislature could not possibly have intended.[26]  Under the procedure outlined in § 51.09, a juvenile may waive any right "unless contrary intent *clearly* appears elsewhere."[27]  Contrary intent clearly appears elsewhere with respect to "service of [the] summons"—§ 53.06(e) explicitly provides that a juvenile cannot waive

---

[23]   TEX. FAM. CODE § 51.09(a) (Vernon 1986).  *See also* TEX. FAM. CODE § 51.09 (current).

[24]   *Johnson v. State*, 594 S.W.2d 83, 86 (Tex. Crim. App. 1980), *overruled on other grounds by Hardesty v. State*, 659 S.W.2d 823 (Tex. Crim. App. 1983).

[25]   *D.A.W. v. State*, 535 S.W.2d 21, 22 (Tex. App.–Houston [14th Dist.] 1976, writ ref'd n.r.e.) ("Although § 53.06(e) prohibits the child's waiving of *service* of summons, . . . there is apparently nothing to prevent a child from waiving a *defect* in the summons.") (emphasis in original); *In re K.W.S.*, 521 S.W.2d 890, 894 (Tex. App.–Beaumont 1975, no writ) ("We would face an entirely different question if our record showed an explanation by the trial judge of the rights of the child and the possible consequences of a waiver; and, that the child, after such explanation and understanding, voluntarily (with concurrence of his attorney) waived the defects in the summons.").  Both the Texas Supreme Court and this Court have cited *K.W.S.* with respect to the jurisdictional effect of failing to comply with § 54.02(b).  *See D.W.M.*, 562 S.W.2d at 852; *Grayless*, 567 S.W.2d at 219.

[26]   *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991).

[27]   TEX. FAM. CODE § 51.09(a) (Vernon 1986) (emphasis added).

service. But § 53.06(e) does not say that a juvenile cannot waive a defect in the wording of the summons or in the timing of its service, and the context of the statute does not otherwise make it clear that such a waiver would be prohibited. Because contrary intent does not *clearly* appear elsewhere with respect to such defects in service, the unambiguous language of § 51.09 permits a waiver of such defects.

## B. Direct Versus Collateral Attack

In the civil default-judgment context, the Texas Supreme Court has explicitly articulated the rule for service-based jurisdictional claims raised in a direct attack. For the judgment to survive a direct attack, "strict compliance with the rules for service of citation [must] affirmatively appear on the record."[28] Possibly indicating that it would apply a similar approach in direct attacks in juvenile-transfer cases, the Supreme Court in *W.L.C.* stated, "[A]bsent an affirmative showing of service of summons in the record, the juvenile court is without jurisdiction to transfer the juvenile to district court."[29] In that case, the judge of the juvenile court had ordered the clerk of the court to serve the juvenile in open court but the "only documentary evidence of service in the appellate record [was] an instrument" whose return was left blank.[30] In *K.W.S.*, the court of appeals emphasized that there was "no *record* showing" that the requirements for waiver under § 51.09 had been met.[31] Both *W.L.C.* and *K.W.S.* were direct attacks because they were direct appeals from juvenile transfer

---

[28] *Ins. Co. of State of Pennsylvania v. Lejeune*, 297 S.W.3d 254, 255 (Tex. 2009); *Primate Constr. v. Silver*, 884 S.W.2d 151, 152 (Tex. 1994).

[29] 562 S.W.2d at 455.

[30] *Id.*

[31] 521 S.W.2d at 894 & n.9 (emphasis in original).

decisions.[32]

But the rule for collateral attacks is the opposite of the rule for direct attacks. For a judgment to be overturned on collateral attack, the record must affirmatively establish the *absence* of jurisdiction. In *Ex parte Johnson*, a juvenile-delinquency case, we explained this to be the rule that applied in habeas corpus:

> [R]elator insists that the judgment of delinquency is void because of the erroneous recital aforesaid and therefore may be attacked in a habeas corpus proceeding. Such proceeding is a collateral attack and is available only in event that the judgment is absolutely void. In other words, the attack will prevail only when the record affirmatively reveals that the court which rendered the judgment had no jurisdiction.[33]

Elsewhere, we have stated that it is "the settled law of this State that the judgment of a court of competent jurisdiction cannot be collaterally attacked unless the record affirmatively shows lack of jurisdiction."[34] Our cases have consistently characterized habeas corpus as a collateral attack on a judgment of conviction.[35] Similarly, the Texas Supreme Court has explained that a jurisdictional challenge will succeed on collateral attack only if the "record affirmatively reveals a jurisdictional defect."[36] Moreover, the Supreme Court has suggested in the default-judgment context that "mere

---

[32] *See W.L.C.*, 562 S.W.2d at 454; *K.W.S.*, 521 S.W.2d at 891.

[33] 131 Tex. Crim. 438, 440, 99 S.W.2d 598, 599 (1936).

[34] *Douglas v. State*, 58 Tex. Crim. 122, 125, 124 S.W. 933, 935-36 (1910).

[35] *See Garza v. State*, 435 S.W.3d 258, 261-62 (Tex. Crim. App. 2014) (contrasting direct appeal with habeas case, calling the latter "a collateral proceeding" and quoting from an opinion that termed habeas corpus a "collateral attack"); *Ex parte Denton*, 399 S.W.3d 540, 545 (Tex. Crim. App. 2013 (referring to habeas corpus as a "collateral attack"); *Ex parte Baker*, 185 S.W.3d 894, 897 (Tex. Crim. App. 2006) (referring to "the collateral procedure of habeas corpus").

[36] *Alfonso v. Skadden*, 251 S.W.3d 52, 55 (Tex. 2008) (In former husband's proceedings to enforce divorce decree, former wife collaterally attacked the decree. Record affirmatively showed jurisdictional defect in original proceedings.).

technical defects" in service that would result in reversal on direct attack should not result in overturning a judgment on collateral attack: "But the cases on which [the party] relies simply reiterate the strict compliance requirement in the context of a direct attack on a default judgment. Extending these stringent standards to collateral attacks involving mere technical defects in service would pose a serious threat to the finality of judgments."[37]

Our own cases in the juvenile-transfer context are not inconsistent with the rule that the record must affirmatively show the absence of jurisdiction to justify relief on habeas corpus. The cases in which we have granted relief on a juvenile-transfer claim did so on direct appeal from the criminal conviction, not habeas corpus.[38] An argument could be made that the cases do not involve direct attacks because the juvenile could have immediately appealed the transfer decision rather than waiting for the direct appeal from the criminal conviction.[39] For that reason, we will assume, without deciding, that the cases should be treated as collateral attacks. In *Grayless*, "the record reflect[ed] that no summons ever was issued" on the transfer petition,[40] so the record affirmatively reflected the absence of jurisdiction. In *Perry Johnson*, we stated, "The record does not show that a summons was

---

[37] *PNS Stores v. Rivera*, 379 S.W.3d 267, 274 (Tex. 2012).

[38] *See Grayless*, 567 S.W.2d at 219; *Johnson v. State*, 551 S.W.2d 379, 380 (Tex. Crim. App. 1977) ("*Perry Johnson*"); *Johnson*, 594 S.W.2d at 84 ("*Michael Johnson*").

[39] The ability to make an earlier appeal arguably makes the situation analogous to an appeal from the revocation of regular or deferred adjudication probation, where we prohibit challenges to the imposition of probation (an earlier proceeding from which an appeal could have been taken) unless the challenge falls within the "void judgment exception." *See Nix v. State*, 65 S.W.3d 664, 667-68 (Tex. Crim. App. 2001).

[40] 567 S.W.2d at 219.

ever issued,"[41] but we also explained that we had "a full and complete record of the juvenile proceedings,"[42] and we concluded that "the instant case shows on its face that the juvenile court did not have jurisdiction."[43] In *Michael Johnson*, we found that the summons was defective for failing to state that the hearing was for the purpose of discretionary transfer, and we said that "there is nothing in the record to show that" the waiver requirements of § 51.09 were met.[44] As we have explained above, one of the requirements of § 51.09 is that the waiver be in writing or in court proceedings that are recorded.[45] The *Michael Johnson* opinion quoted from portions of the reporter's record in the juvenile proceedings and did not state that any portion of the reporter's record was missing.[46] Because the reporter's record was available, and it did not reflect a waiver as § 51.09 requires, this Court's observation that the record did not show compliance with § 51.09 was tantamount to saying that the record affirmatively showed non-compliance.

In the present case, however, we have no reporter's record from the juvenile proceedings. While service of the summons was defective, applicant might have waived any defect in service on the record at the hearing on either August 1 or August 4, and the reporter's record showing such a waiver may no longer exist. In fact, on August 1, applicant was served with the summons at the courthouse just two hours and fifteen minutes after the start time listed in the summons, and just an

---

[41] 551 S.W.2d at 380.

[42] *Id.* at 380 n.1.

[43] *Id.* at 382.

[44] 594 S.W.2d at 86.

[45] *See* this opinion at n.23 and accompanying text.

[46] 594 S.W.2d at 85.

hour and forty-five minutes after the start time listed on the July 27 entry in the juvenile court's docket sheet. The possibility exists that applicant was served during the August 1 hearing and waived the lateness of service on the record at that time. The more likely scenario, however, appears to be a waiver on August 4, given the docket-sheet entry for that date that any further notice was waived by respondent. This entry may relate to a waiver on the record at the August 4 hearing of defects in service.

And we point out that nothing in the record suggests that applicant was deprived of actual notice of the transfer hearing. Quite the contrary; the record is littered with evidence that applicant had actual notice. The State filed its motion to waive jurisdiction in the juvenile court on May 26, and on May 27 the juvenile court initially set the case for a transfer hearing on June 7. That hearing was reset several times, but on July 27, the parties were informed that a transfer hearing would occur on August 1. The transfer hearing was reset once more on August 1 to August 4, and the parties appeared at the August 4 hearing and litigated the issue of transfer.

Applicant contends that the waiver notation on the August 4 docket sheet is "almost illegible, and certainly unintelligible." He says that it is not clear "what was being waived, nor who it was who was waiving whatever it was which was waived." Applicant reads the notation as "Ay (sic) further notice waived by Reip (sic)," but our reading of the docket sheet is that the notation is "Any further notice waived by Resp." Regardless, the record that we do have is consistent with applicant having waived defects in the summons in accordance with the requirements of § 51.09 at the August 4 hearing, or even at the August 1 hearing.

Applicant further suggests that, even if a waiver would have been valid if the August 4 hearing had been recorded, "the hearing was not recorded." But the record in the present case does

not establish that the August 4 hearing was not recorded. All that can be established is that we do not currently have—and cannot obtain—a recording of the August 4 hearing. Any uncertainty about whether either the August 1 hearing or the August 4 hearing was recorded must be held against applicant, as the party attempting to disturb the juvenile court's disposition in a collateral attack.[47]

Applicant further argues that there was no "affirmative showing" as required by *W.L.C.* that applicant was waiving proper service. But *W.L.C.* was a direct attack, where affirmative showing of the requisite waiver would be required.[48] As we explained above, the opposite rule applies on collateral attack, where the record must affirmatively show that the proper waiver did not take place.

Applicant contends that "if he had waived proper service at the August 1st hearing, there would have been no need to reschedule the hearing, thus indicating that there was *no* waiver."[49] This surmise on applicant's part is not sufficient to affirmatively show that a proper waiver did not take place. Even with a waiver, the juvenile court may have thought it prudent to satisfy the two-day notice rule by delaying the hearing to August 4, or applicant or his attorney may have insisted on the two days as a condition of executing the waiver. Or the hearing may have been rescheduled to August 4 for reasons unrelated to the lateness of service.[50]

---

[47] Applicant also contends, for reasons detailed in this opinion at n.50, that it is "extremely doubtful that there was any court reporter's record to be obtained." Given our response in n.50 and the payment vouchers for court-reporter services on August 1 and August 4, we disagree with applicant's "extremely doubtful" assessment, but, in any event, applicant's concerns do not affirmatively establish that neither the August 1 nor August 4 proceedings were recorded.

[48] *See* this opinion at n.32, accompanying text, and associated paragraph.

[49] Emphasis in applicant's brief.

[50] In the portion of applicant's brief devoted to laches, applicant says, "[I]t is undisputed that the case was reschedule[d] from August 1st to August 4th due to a lack of time service on [a]pplicant." Although the record may support an inference that the hearing was rescheduled

### III. CONCLUSION

Applicant was served with a summons for a transfer hearing. Any defects associated with that service were waivable under § 51.09. Although § 51.09 requires that the waiver be in writing or occur in a hearing that was recorded, such a waiver could have occurred at a recorded hearing on August 1 or August 4, with the record of the relevant hearing no longer being in existence.[51] Consequently, the record does not affirmatively establish that the juvenile court lacked jurisdiction to transfer the case, and therefore does not affirmatively establish the absence of jurisdiction in the district court.[52]

We deny relief.

Delivered: June 17, 2015
Publish

---

because of the late service, the record does not definitively establish why the hearing was rescheduled.

[51] We need not address whether the defects in service at issue in the present case could qualify as "mere technical defects" that would be disregarded in a collateral attack. *See* this opinion at n.37 and accompanying text.

[52] Due to our disposition of the jurisdiction issue, we decline to address the laches issue.