

# Fourth Court of Appeals

## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-18-00310-CR

Shaun Ruiz **PUENTE**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 218th Judicial District Court, Atascosa County, Texas
Trial Court No. 14-01-0040-CRA
Honorable Donna S. Rayes, Judge Presiding

Opinion by:     Luz Elena D. Chapa, Justice

Sitting:        Sandee Bryan Marion, Chief Justice
                Rebeca C. Martinez, Justice
                Luz Elena D. Chapa, Justice

Delivered and Filed: March 18, 2020

AFFIRMED

Shaun Ruiz Puente appeals his conviction for capital murder. He argues the trial court erred by denying his motion to suppress, admitting evidence in violation of Texas Rules of Evidence 403 and 404(b), and erroneously charging the jury as to the elements of the offense. We affirm the judgment of conviction.

## Procedural Background[1]

Puente was indicted for the capital murder of Robert Deckard, a police officer. The alleged offense occurred on or about December 8, 2013, as Officer Deckard was attempting to detain Puente for suspected robbery. The trial court denied Puente's pre-trial motion seeking to suppress statements he made during three interviews, as well as evidence obtained from a traffic stop he contends was not supported by reasonable suspicion. The case was tried to a jury. The trial court admitted, over Puente's Rule 403 and 404(b) objections, testimony that Puente fired a gun at the officer who conducted the traffic stop. The jury found Puente guilty, and he was sentenced to life in prison. Puente appeals.

## Motion to Suppress

In his first two issues, Puente argues the trial court erred by denying his motion to suppress. We review a trial court's ruling on a motion to suppress under a bifurcated standard. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). We review a trial court's conclusions of law de novo. *Id.* at 328. We afford a trial court's fact findings almost total deference if they are supported by the record, especially when they are based on the evaluation of witness credibility and demeanor. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). "The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony." *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). When the trial court makes express findings of fact, we view the evidence in a light most favorable to the ruling and

---

[1] Puente's appellant's brief does not describe the facts surrounding the capital murder offense in this case. The State accepts Puente's statement of the facts, and also does not describe the facts surrounding the capital murder. The reporter's record in this case consists of over 60 volumes and over 40 exhibit files. Because the parties have not directed this court to the relevant evidence objectively describing the factual background of this case, and have described only those facts relevant to each legal issue, we will do the same. *See* Tex. R. App. P. 47.1, 47.4. "As this is a memorandum opinion and the parties are familiar with the facts, we only recite those facts necessary to the disposition of the case." *Hodges v. State*, No. 10-18-00263-CR, 2019 WL 1187431, at *1 n.2 (Tex. App.—Waco Mar. 13, 2019, no pet.) (mem. op., not designated for publication); *see, e.g.*, *Campbell v. State*, No. 03-17-00515-CR, 2019 WL 964169, at *1 n.1 (Tex. App.—Austin Feb. 28, 2019, no pet.) (mem. op., not designated for publication) (same).

determine whether the evidence supports the findings. *Id.*; *see Rodriguez v. State*, 968 S.W.2d 554, 558 n.8 (Tex. App.—Houston [14th Dist.] 1998, no pet.).

## A. Suppression of Puente's Statements

In his first issue, Puente argues the trial court should have suppressed video recordings of and testimony about statements he made during three different interviews.

### 1. Relevant Facts

The facts relevant to this issue are set out in the trial court's findings of fact and conclusions of law, which we summarize as follows:

- Puente challenged the voluntariness of statements he made during three interviews with law enforcement.

- The first interview was conducted on December 8, 2013, by Detective Cardenas and Ranger Wilson. The second interview was also conducted on December 8, 2013, by Detectives Luna and Orozco. The third interview was conducted on December 12, 2013, by Detectives Barrera and Ochoa.

- Puente was in custody during each interview.

- Before questioning Puente in each of the three custodial interrogations, law enforcement gave Puente the admonishments contained in Texas Code of Criminal Procedure 38.22.

- At the times he was read his rights, Puente acknowledged verbally in the affirmative that he understood the rights that were given to him in each instance.

- Puente did not acknowledge verbally that he waived the rights read to him.

- Puente's responses to the questions asked were lucid and appropriate.

- At no time did Puente indicate he did not understand or was unable to comprehend what was asked of him.

- Puente was able to guide and correct the false impressions of the interviewing officers and provide them with correct information.

- Puente appeared to understand the nature of the interview and that it involved criminal charges against him and his co-actor.

- Puente had spent hours in hiding outdoors in cold weather within twenty-four hours of the first two interrogations.

- Puente had been taken to the hospital immediately after being taken into custody.

- Puente was treated for minor injuries at the hospital and released into the custody of law enforcement.

- Puente was addicted to methamphetamine at the time of the interrogations.

- Puente was deprived of methamphetamine at the time of the interrogations.

- There were no observable effects of the methamphetamine deprivation during the interrogations.

- There was no observable evidence that Puente was under the influence of any drugs during the interrogations.

- The testing of the intellectual ability of Puente resulted in an IQ score of 79.

- The IQ score of Puente indicates he was intellectually capable of understanding and waiving his rights.

Puente does not challenge the sufficiency of the evidence to support these findings. Instead, he argues the facts establish the inadmissibility of evidence about statements he made during those interviews. During the December 8, 2013 interview by Detective Cardenas and Ranger Wilson, Puente admitted he had shot Officer Deckard.

*2. Applicable Law*

Texas law establishes procedural safeguards for securing a suspect's *Miranda* rights. *Joseph v. State*, 309 S.W.3d 20, 23–24 (Tex. Crim. App. 2010). "The State has the burden of showing that a defendant knowingly, intelligently, and voluntarily waived his *Miranda* rights." *Id.* at 24. A waiver need not be express, and "in some cases, may be clearly inferred from the actions and words of the person interrogated." *Id.*

### 3. Discussion

Puente contends he did not waive his rights voluntarily, knowingly, and intelligently for two reasons. First, he complains about "the failure of the police to ask [him] whether he waived his <u>Miranda</u> rights." Puente suggests this court should adopt a position urged in a concurring opinion by Judge Cochran in *Joseph v. State*, and require the police to specifically ask a suspect in custody whether he will waive his *Miranda* rights and to obtain an express waiver before an interrogation. Second, Puente argues the evidence he presented shows he did not voluntarily, intelligently, and knowingly waive his *Miranda* rights.

We decline to adopt Puente's position to require police departments to obtain an express waiver by expressly asking a suspect in custody whether he will waive his *Miranda* rights. Puente cites no legal authority, and we are aware of none, supporting such a requirement. Instead, waivers may be implied. *See id.* at 24 n.5 (rejecting the imposition of an express waiver requirement). Moreover, in the *Joseph* concurrence, Judge Cochran recommended that police departments voluntarily adopt a policy of obtaining express waivers because such a policy would eliminate having to litigate implied waivers once in court. *See id.* at 30 (Cochran, J., concurring) ("[L]aw-enforcement officers are well advised to expressly ask a suspect to waive his *Miranda* rights so as to avoid later, protracted litigation").

Similarly, we disagree the evidence favorable to Puente's position establishes he did not voluntarily, intelligently, and knowingly waive his *Miranda* rights. Puente relies on his own statements during the interview and an expert opinion that was based on his statements and the expert's observations of Puente on the video recordings. However, the trial judge, who was able to observe Puente on the video recording, was the sole trier of fact, and the sole judge of the credibility of the evidence and the weight to be given to the evidence. *See Valtierra*, 310 S.W.3d at 447. Based on the unchallenged findings of fact, we cannot say the evidence on which Puente

relies establishes the implied waiver of his *Miranda* rights was not voluntary, intelligent, or knowing. We therefore overrule Puente's first issue.

## B. The Traffic Stop

In his second issue, Puente argues the trial court should have suppressed evidence obtained from the traffic stop.

### 1. *Relevant Facts*

A dispatch call reported the shooting of Officer Deckard to police officers in surrounding areas. Deputy Sanchez, of the Wilson County Sheriff's Office, heard the call at approximately 2:00 a.m. The call described a car connected with the shooting as a green Dodge Neon with white racing stripes, a spoiler,[2] and license plate number of DRN365. Dispatch revised the description of the car as a grey Mercury Tracer. Approximately thirty to forty minutes later, Deputy Sanchez saw a black car with white stripes, a spoiler, and a license plate number of DR1N635. Deputy Sanchez followed the car until the driver turned on the car's hazard lights and pulled over. Deputy Sanchez activated the lights on his patrol car to conduct a "welfare check." The passenger, later identified as Puente, exited the car and started shooting at Deputy Sanchez's car. The driver and Puente then fled on foot.

### 2. *Applicable Law*

Under the Fourth Amendment, a police officer may stop a car and detain the driver if the officer has reasonable suspicion for the stop. *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011). "A police officer has reasonable suspicion to detain if he has specific, articulable facts that, combined with rational inferences from those facts, would lead him reasonably to conclude that the person detained is, has been, or soon will be engaged in criminal

---

[2] Deputy Sanchez testified a spoiler is "a fin they put on the trunk. It's suppose[d] to be aero dynamic."

activity." *Id.* "This standard is an objective one that disregards the actual subjective intent of the arresting officer and looks, instead, to whether there was an objectively justifiable basis for the detention." *Id.* Furthermore, a stop of a car may be justified based on a local police officer's community caretaking function. *Byram v. State*, 510 S.W.3d 918, 922 (Tex. Crim. App. 2017).

### 3. Discussion

Puente does not challenge the traffic stop as an improper caretaking function, which could independently support the traffic stop. *See id.* Instead, Puente argues Deputy Sanchez lacked reasonable suspicion to stop the car. Puente relies on Deputy Sanchez's testimony that he (1) was looking for a car based on the description dispatch provided, which arguably differed from the car he stopped; and (2) did not observe a traffic offense that would independently justify the stop. Although Deputy Sanchez testified he did not observe a traffic offense that would independently justify the stop, he testified the car he stopped matched the description dispatch provided in that the car had racing stripes, a spoiler, and a nearly identical license plate. Deputy Sanchez also testified he was familiar with the shape of a Mercury Tracer, and the shape of the car he stopped was similar to the shape of a Mercury Tracer. Given these similarities, the differences in the models of the car and between the colors grey and black are not substantial because the car substantially matched the description provided by the dispatcher. *See State v. Mercer*, No. 05-02-01359-CR, 2003 WL 1878951, at *1 (Tex. App.—Dallas Apr. 16, 2003, pet. ref'd) (not designated for publication) (holding officer had reasonable suspicion when the car substantially matched the description provided by the dispatcher). Deputy Sanchez did not need to have been certain the car he stopped was the same car reported by dispatch; he merely needed to have had reasonable suspicion. *See Derichsweiler*, 348 S.W.3d at 914. We hold the evidence admitted at the suppression hearing supports the trial court's denial of Puente's motion to suppress as it relates to the traffic stop. We therefore overrule Puente's second issue.

**ADMISSION OF EVIDENCE**

In his third and fourth issues, Puente argues the trial court erred by admitting Deputy Sanchez's testimony that Puente shot at him during the traffic stop. Puente objected to the testimony as inadmissible under Texas Rules of Evidence 403 and 404(b). We review a trial court's ruling on the admission of evidence for an abuse of discretion. *Gittens v. State*, 560 S.W.3d 725, 731 (Tex. App.—San Antonio 2018, no pet.). A trial court does not abuse its discretion if its ruling is within the zone of reasonable disagreement. *Id.*

**A. Applicable Law**

Under Rule 403, a trial court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." TEX. R. EVID. 403. Under Rule 404(b), "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." *Id.* R. 404(b)(1). Such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* R. 404(b)(2).

**B. Analysis**

Puente argues Deputy Sanchez's testimony was inadmissible under Rule 403 for being unfairly prejudicial and Rule 404(b) for being improper character evidence. The Court of Criminal Appeals has set out the analysis for such issues in *Alba v. State*, 905 S.W.2d 581 (Tex. Crim. App. 1995). "An extraneous offense must be shown to be relevant apart from character conformity before it may be admitted into evidence." *Id.* at 585. "If relevant, then the extraneous offense must be shown to have more probative value than prejudicial impact." *Id.* "[F]light is admissible as a circumstance from which an inference of guilt may be drawn." *Id.* at 586. "So long as the extraneous offense is shown to be a necessarily related circumstance of the defendant's flight, it

may be admitted to the jury." *Id.* When a Rule 404(b) objection is accompanied by a Rule 403 objection, "the decision on admissibility lies within the discretion of the trial court." *Id.*

The evidence showed there was a robbery and a suspect shot Officer Deckard to avoid apprehension. The evidence also showed a description of the suspect's vehicle was reported over dispatch. Deputy Sanchez testified he was following the car because it matched the description of a car involved in the shooting of Officer Deckard earlier that evening. He testified the traffic stop occurred within a couple hours of when it was known Officer Deckard was shot. When Deputy Sanchez stopped the car, Puente shot at him and fled. This evidence shows Puente's attempts to shoot Deputy Sanchez necessarily related to the shooting of Officer Deckard. *See id.* This evidence connected Puente to the charged offense and established the identity of the suspect who shot Officer Deckard, and the prejudicial effect of the evidence cannot be said to be undue because it related to the circumstances of flight from the original offense. *See id.*; *see also Hall v. State*, No. 04-02-00562-CR, 2004 WL 86138, at *2 (Tex. App.—San Antonio Jan. 21, 2004, no pet.) (mem. op., not designated for publication). We hold the trial court did not abuse its discretion and overrule Puente's third and fourth issues. *See Alba*, 905 S.W.2d at 585.

### CHARGE ERROR

In his fifth issue, Puente argues the trial court erred by overruling his objection that the jury charge did not require the jury to find he intentionally killed Officer Deckard, and allowed the jury to find him guilty if he knowingly killed Officer Deckard. According to Puente, the charge was erroneous because the law required the jury to find he intentionally killed Officer Deckard.

"In resolving a challenge to the jury charge, we first determine whether error exists." *Torres v. State*, 560 S.W.3d 366, 372 (Tex. App.—San Antonio 2018, no pet.). A jury charge that tracks the language of a particular statute generally is a proper charge. *Casey v. State*, 215 S.W.3d

870, 887 (Tex. Crim. App. 2007). The jury found Puente guilty of capital murder. The application

section of the jury charge for capital murder reads as follows:

> [I]f you find from the evidence beyond a reasonable doubt that on or about December 8, 2013, in Atascosa County, Texas, the defendant Shaun Ruiz Puente, did *intentionally or knowingly* cause the death of Robert Deckard by shooting him with a firearm, and Robert Deckard was a peace officer who was acting in the lawful discharge of this official duty, to-wit: attempting to lawfully detain said defendant and the said defendant knew Robert Deckard was a peace officer, then you will find the defendant guilty of capital murder. (emphasis added).

The State argues there is no error because the indictment tracks the language of the particular

statute. We agree.

The offense of capital murder is provided for in section 19.03 of the Texas Penal Code.

TEX. PENAL CODE § 19.03(a). "A person commits an offense if the person commits murder as

defined under Section 19.02(b)(1) and . . . the person murders a peace officer or fireman who is

acting in the lawful discharge of an official duty and who the person knows is a peace officer or

fireman." *Id.* § 19.03(a)(1). Section 19.02(b)(1) defines the offense of murder as follows, "A

person commits an offense if he . . . *intentionally or knowingly* causes the death of an individual."

*Id.* § 19.02(b)(1) (emphasis added). Consequently, capital murder under section 19.03(a)(1) of the

Texas Penal Code may be committed intentionally or knowingly. The indictment alleged both

mental states, and the jury charge correctly tracked the language of the capital murder statute.

Puente argues specific intent to kill is necessary for attempted murder and when the death penalty

is assessed, but this is not an attempted murder or a death penalty case. We hold there is no charge

error and overrule Puente's fifth issue. *See Coble*, 330 S.W.3d at 297; *Torres*, 560 S.W.3d at 372.

## CONCLUSION

Having overruled all of Puente's issues, we affirm the judgment of conviction.

Luz Elena D. Chapa, Justice

DO NOT PUBLISH

- 10 -