**EX PARTE Justin Todd VALDEZ, Applicant**

**NO. WR-82,807-01**

Court of Criminal Appeals of Texas.

Delivered: May 4, 2016

Charles F. Baird, Attorney at Law, Baird Farrelly, PLLC, Austin, TX, for Applicant.

F. C. Schneider, District Attorney Caldwell County, Lockhart, TX, Lisa C. McMinn, State's Attorney, Austin, for the State.

## OPINION

Newell, J., delivered the opinion of the Court in which Keller, P.J., and Meyers, Keasler, Hervey, Alcala, Richardson and Yeary, JJ., joined.

We filed and set this application for an original writ of habeas corpus to consider whether an original writ of habeas corpus in this Court is the proper avenue for seeking an out-of-time petition for discretionary review (PDR) from a judgment imposing community supervision. We con-

clude that it is not. Relief must first be sought at the trial level. Because Applicant has not attempted to obtain habeas corpus relief at the trial level, we dismiss this application.

### Background

Applicant was convicted of misdemeanor assault and placed on community supervision. He appealed that conviction, and the court of appeals affirmed. *Valdez v. State,* No. 03–12–00098–CR, 2014 WL 4362949 (Tex.App.-Austin Aug. 29, 2014) (not designated for publication). This Court granted Applicant two extensions of time to file a PDR, but ultimately he did not file one. Mandate issued on January 15, 2015.

Filing an application for an original writ of habeas corpus in this Court on Applicant's behalf, counsel contends that Applicant is entitled to an out-of-time PDR. In an affidavit attached to the application, counsel states that he intended to timely file a PDR but failed to do so because he mistakenly believed that the PDR was not due until January 24, 2015. Counsel also states in the affidavit that he has spoken personally with the Caldwell District Attorney and that the District Attorney agrees that applicant is entitled to the opportunity to file a PDR. Counsel further contends that an original writ of habeas corpus from this Court is the appropriate mechanism for obtaining an out-of-time PDR because "a misdemeanor trial judge does not have authority to order the Court of Criminal Appeals to permit the filing of an out-of-time PDR."

We abated the proceedings for thirty days and invited the State to file a re-sponse. *Ex parte Valdez,* No. WR–82,807–01, 2015 WL 1407243 (Tex.Crim.App. Mar. 25, 2015) (not designated for publication). No response was filed. We subsequently filed and set this application for submission.

### Habeas Authority

Article I, § 12, of the Texas Constitution provides that the writ of habeas corpus "is a writ of right, and shall never be suspended." TEX. CONST., Art. I, § 12. That constitutional provision also charges the legislature with enacting "laws to render the remedy speedy and effectual." *Id.* Article V of the Texas Constitution explicitly confers power on this Court to issue writs of habeas corpus "[s]ubject to such regulations as may be prescribed by law.", TEX. CONST., Art. V, § 5(c). Article 11.05 of the Code of Criminal Procedure recognizes the authority of this Court, the district courts, the county courts, and any judges of these courts to issue the writ of habeas corpus "under the rules prescribed by law." TEX. CODE CRIM. PROC., art. 11.05.

Chapter 11 of the Code of Criminal Procedure contains some provisions that apply in general to habeas proceedings, and it also contains a few sections that detail procedures to be used for relief from particular types of judgments, orders, or proceedings under certain circumstances. TEX.CODE CRIM. PROC., arts. 11.01–11.04, 11.07–11.65. When an application does not fall within one of the provisions relating to a certain type of judgment, order, or proceeding, a habeas corpus remedy may nevertheless be available under the Texas Constitution and Article 11.05.[1] For ex-

---

1. *Ex parte Schmidt,* 109 S.W.3d 480, 483 (Tex.Crim.App.2003) ("When they are read together, Article V, section 16 of the Constitution, Section 25.0003(a) of the Government Code, and Article 11.05 of the Code of Criminal Procedure give the statutory county court at law, and the judges of that court, the power to issue the writ of habeas corpus when a person is restrained by an accusation or conviction of misdemeanor."); *See also Rodriguez v. Court of Appeals, Eighth Supreme Judicial Dist.,* 769 S.W.2d 554, 558 (Tex.Crim.App.

ample, we held in *Ex parte Schmidt* that a person who had discharged a misdemeanor sentence, but was suffering collateral consequences of that sentence, could file a habeas application in the county court even though he did not meet the confinement requirement of Article 11.09. 109 S.W.3d at 483. A habeas application that is not governed by one of the provisions applying to specific types of judgments, orders, or proceedings is often referred to as a "Constitutional writ" or an "Article 11.05 writ."

Here, Applicant has sought relief in this Court by virtue of a "Constitutional writ" rather than invoking our appellate jurisdiction via PDR from a writ application filed with the trial court and taken through the usual appellate process. Because this is not the type of circumstance calling for this Court's exercise of its original habeas corpus jurisdiction, we dismiss the application.

■ As we explained in *Ex parte Lambert*, this Court will abstain from exercising its original habeas jurisdiction except in extraordinary circumstances.

We are also of the opinion that this is a matter over which the district judges are authorized to entertain jurisdiction and grant the writ of habeas corpus. While the Constitution and the statute on the subject give this court jurisdiction to issue writs of habeas corpus, yet we do not believe it was the intention of the law makers to constitute this tribunal a nisi prius court for the purpose of issuing and trying indiscriminately all cases of habeas corpus. The Constitution and the laws of this State authorize us to review such cases on appeal, and we now lay down the rule that, except in extraordinary cases, we will not entertain jurisdiction as a court to grant original writs of habeas corpus.

37 Tex.Crim. 435, 435–36, 36 S.W. 81, 81–82 (1896). We have followed or cited to this rule in later cases, though it has been some time since we have had the occasion to address this rule, or *Lambert*, in a published opinion.[2] Nevertheless, citing our decision in *Lambert* among others, the United States Supreme Court has much more recently recognized the vitality of this rule across the various states. *Carey*

1989) (habeas corpus application could be filed with trial court pursuant to Texas Constitution when Applicant did not meet the custody requirement of Article 11.07).

**2.** *See Guinn v. State*, 88 Tex.Crim. 509, 228 S.W. 233, 234 (1921) (following *Lambert*); *Ex parte Smallwood*, 87 Tex.Crim. 268, 221 S.W. 293, 293 (1920) (citing *Lambert*); *Ex parte Houston*, 87 Tex.Crim. 8, 219 S.W. 826, 826 (1920) (quoting *Ex parte Alderete*, 83 Tex. Crim. 358, 203 S.W. 763, 764 (1918) ("It does not follow that the Court of Criminal Appeals will exercise its jurisdiction by granting a writ in every application for writ of habeas corpus. The contrary policy has been declared and made necessary; and, generally speaking, it will not issue original writs of habeas corpus in cases where other courts have jurisdiction to do so.")); *Ex parte Japan*, 36 Tex.Crim. 482, 38 S.W. 43, 43–44 (1896) (following *Lambert*); *see also Ex parte Phelper*, 433 S.W.2d 897, 897–98 (Tex.Crim.App.1968)

("This court has consistently declined to exercise its original jurisdiction in habeas corpus attacks upon the validity of a misdemeanor conviction, the county court, district court, or a judge of said court having jurisdiction to grant relief, and the petitioner having the right of appeal from an order denying relief.") (citing *Smallwood* and other cases); *Ex parte Rodriguez*, 169 Tex.Crim. 367, 334 S.W.2d 294, 294–95 (1960) ("This Court does not hear evidence. In proceedings of this character it has been the uniform practice of this Court for many years to require that resort be first had to application for habeas corpus to the judge of the trial court or other county court, county court at law or district judge of the county for relief, and an application for habeas corpus originally filed in this Court attacking the legality of confinement under a misdemeanor judgment will not otherwise be entertained.") (citing *Japan* and other cases).

*v. Saffold,* 536 U.S. 214, 122 S.Ct. 2134, 153 L.Ed.2d 260 (2002) (quoting *Lambert* and also quoting *In re Barlow,* 48 Idaho 309, 282 P. 380 (1929)) ("The Supreme Court, having jurisdiction to review on appeal decisions of the district courts in habeas proceedings will not exercise its power to grant an original writ of habeas corpus, except in extraordinary cases.") (citations omitted).

Under the rule in *Lambert,* then, this Court will accept a "Constitutional writ" application as an original matter only in extraordinary circumstances. The applicant must first seek appropriate relief at the appropriate trial-level court. The refusal of an appropriate trial-level court to issue the writ after being presented with a colorable claim will generally constitute an extraordinary circumstance.[3] We emphasize that, for the purpose of establishing extraordinary circumstances, the court of conviction is ordinarily the appropriate court in which to first seek relief, if it has habeas jurisdiction. And if a trial-level court issues the writ but denies relief, the applicant's remedy is an appeal from that determination, not an original writ with this Court.

Applicant contends that this is one of those "extraordinary circumstances" because "a misdemeanor trial judge does not have authority to order the Court of Criminal Appeals to permit the filing of an out-of-time PDR." We disagree. In *Rodriguez v. Court of Appeals, Eighth Supreme Judicial Dist.,* we held that a trial court that otherwise had habeas authority had the power to grant an out-of-time appeal. 769 S.W.2d at 558–59 (granting mandamus relief against a court of appeals's refusal to docket an appeal: "We hold that the district court had jurisdiction to entertain the writ of habeas corpus, and applicant in this cause properly invoked that jurisdiction by filing his writ with the district court. Thus, the district court had jurisdiction of the habeas application. Since the district court had this jurisdiction, it had the authority to grant an out-of-time appeal."). We see no relevant distinction between a request for an out-of-time appeal and a request for an out-of-time PDR.

Moreover, in both situations, the applicant will ordinarily have to introduce some additional evidence not contained in the trial or appellate record of the case-explaining what happened to prevent the timely filing of an appeal or PDR-and the habeas court will have to pass on the credibility of such evidence. In the present case, for example, applicant seeks an out-of-time PDR based in part on an affidavit in which his attorney claims that he was mistaken about the filing deadline. The trial level is generally the appropriate place to receive evidence and to resolve fact issues, at least in the first instance. *Ex parte Pena,* 484 S.W.3d 428, 430 (Tex. Crim.App.2016) (per curiam).

█ Finally, what Applicant characterizes as a trial judge's authority to "order the Court of Criminal Appeals to permit the filing of an out-of-time PDR" does not, in fact, order us to do anything. Rather, it merely resets the applicable appellate time table. We have allowed trial courts to reset the clock in terms of an out-of-time appeal; we similarly hold that a trial court is authorized to reset the clock for an out-of-time PDR should such relief be necessary through a meritorious application for a writ of habeas corpus.

█ Before seeking relief on a "Constitutional writ" in this Court, an applicant

---

3. This is similar to our rule in mandamus cases that "the petition should be presented first to the court of appeals unless there is a compelling reason not to do so." *See Padilla v. McDaniel,* 122 S.W.3d 805, 808 (Tex.Crim. App.2003).

must first seek relief at the trial level (and avail himself of any appellate remedy if necessary). *Rodriguez*, 769 S.W.2d at 558–59. Applicant did not do so in this case.[4] We dismiss his application for habeas corpus relief in this case so that Applicant may seek relief at the trial level.

Keller, P.J., filed a concurring opinion in which Keasler, Hervey and Yeary, JJ., joined.

Richardson, J., filed a concurring opinion.

Johnson, J., filed a dissenting opinion.

KELLER, P.J., filed a concurring opinion in which KEASLER, HERVEY and YEARY, JJ., joined.

I join the Court's opinion, but I write separately to address whether article 11.072[1] is an available remedy for a claim that seeks an out-of-time petition for discretionary review ("PDR") from a judgment imposing community supervision. I do not agree that article 11.072 is an available remedy for such a claim.

Article 11.072, § 2(b) provides that "the application must challenge the legal validity of: (1) the conviction for which or order in which community supervision was imposed; or (2) the conditions of community supervision."[2] The present application obviously does not challenge the conditions of community supervision. What is relevant to the present case, though, is that a request for an out-of-time PDR would also

not seem to challenge the legal validity of a conviction or community-supervision order.

In construing similar language found in Article 11.07, § 4 (establishing the prohibition against subsequent applications in Article 11.07), we held, in *Ex parte Evans*, that a "challenge to a conviction" meant a claim regarding "the validity of the prosecution or the judgment of guilt."[3] We concluded that, under this definition, a complaint about parole revocation was not a challenge to the conviction.[4] Consequently, because § 4 created a procedural bar only after a defendant filed an initial application "challenging the same conviction," a prior application complaining solely about a parole revocation did not prevent us from considering a subsequent application.[5]

Following *Evans* in *Ex parte McPherson*, we held that a request for an out-of-time appeal was not a challenge to the conviction under Article 11.07, § 4.[6] We explained:

Applicant's initial application seeking an out-of-time appeal did not directly seek to overturn the conviction. His claim that counsel failed to preserve his right to appeal did not concern the validity of the prosecution or the judgment of guilt. Applicant might have challenged the validity of the prosecution or judgment of guilt in any out-of-time appeal granted him. But the validity of the conviction itself was not called into question by the

---

4. The question before the Court is whether we should exercise our original habeas corpus jurisdiction. Having answered that question, it is unnecessary for the Court to decide which type of post-conviction writ application Applicant should file in the trial court.

1. Tex.Code Crim. Proc. art. 11.072.

2. Tex.Code Crim. Proc. art. 11.072, § 2(b)(1), (2).

3. 964 S.W.2d 643, 646–47 (Tex.Crim.App. 1998).

4. *Id.* at 647.

5. *Id.*

6. *Ex parte McPherson*, 32 S.W.3d 860, 860–61 (Tex.Crim.App.2000).

filing of the initial application, which sought only an opportunity to appeal in the court of appeals.[7]

Consequently, we held that a prior application requesting an out-of-time appeal does not trigger the procedural bar to considering a subsequent application.[8] And relying in part upon *McPherson*, we have concluded that a subsequent application was not barred as a result of a prior request for an out-of-time PDR.[9]

The similarity in the language of Article 11.072, § 2(b) and of Article 11.07, § 4 weighs strongly in favor of applying the *Evans* construction to § 2(b), especially considering that both statutes establish procedures for filing applications for writs of habeas corpus. Another factor favoring such a construction is that *Evans* and *McPherson* were decided years before Article 11.072 was enacted, so the legislature was on notice of our construction of the similar language found in Article 11.07.[10]

Moreover, construing Article 11.072, § 2(b) in this way allows the subsequent-application prohibition in Article 11.072 to operate in the same way as the subsequent-application provision in Article 11.07—which ultimately benefits applicants. The subsequent-application provision in Article 11.072 is found in § 9, but unlike its counterpart in Article 11.07, it contains no language regarding challenges to the conviction:

> If a subsequent application for a writ of habeas corpus is filed after final disposition of an initial application under this article, a court may not consider the merits of or grant relief based on the subsequent application unless the application contains sufficient specific facts establishing that the current claims and issues have not been and could not have been presented previously in an original application or in a previously considered application filed under this article because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application.[11]

Under the unambiguous language of § 9, *any* application that brings a claim under Article 11.072 could trigger the procedural bar to subsequent applications.[12] The failure to insert "challenging the conviction" language in § 9 makes sense because Article 11.072 is also a vehicle for challenging the conditions of community supervision,[13]

7. *Id.* at 861.

8. *Id.*

9. *Ex parte Rodriguez*, 466 S.W.3d 846, 849 n. 8 (Tex.Crim.App.2015).

10. *See* Acts 2003, 83rd Leg., ch. 410 (S.B. 344), § 1.

11. Tex.Code Crim. Proc. art. 11.072, § 9(a).

12. *See Ex parte Whiteside*, 12 S.W.3d 819, 821 (Tex.Crim.App.2000) ("Under the plain language of the statute, once an applicant files an application challenging the conviction, all subsequent applications regarding the same conviction must meet one of the two conditions set forth in § 4(a)(1) & (2). The Legislature modified 'initial application' with the phrase 'challenging the same conviction' but did not so modify 'subsequent application.' The lack of any language modifying 'subsequent application' plainly indicates the Legislature's intent that 'subsequent applications' include *all* subsequent habeas corpus applications regarding the same conviction, rather than only those that 'challenge' the conviction.") (emphasis in original). Caselaw in the Article 11.07 context that requires a final disposition of an initial application in order to trigger the subsequent writ bar would, presumably, also apply to require the final disposition of all claims raised in an application in order to trigger Article 11.072's § 9 bar. *See Ex parte Torres*, 943 S.W.2d 469, 474 (Tex. Crim.App.1997) (" '[F]inal disposition' of an initial writ must entail a disposition relating to the merits of all the claims raised.").

13. *See* Tex.Code Crim. Proc. art. 11.072, § 2(b)(2).

and the legislature obviously intended such challenges to trigger the § 9 bar to subsequent applications. To prevent the § 9 bar from being triggered by a request for out-of-time appeal or PDR, then, claims involving such requests would need to be excluded entirely from the Article 11.072 framework.

It has been argued that the § 9 bar would not be triggered because such relief would not constitute the "final disposition of an initial writ application." This contention is accurate only when the initial application raised other claims that were not resolved on the merits or when an out-of-time appeal or PDR was *granted*, resulting in a resetting of the proceedings for habeas purposes. The contention is inaccurate when the request for an out-of-time appeal or PDR is the sole claim in the application and the application is *denied*. The applicant in *Torres* had raised several claims in addition to his request for an out-of-time appeal.[14] We held that a " 'final disposition' of an initial writ must entail a disposition relating to the merits of *all* the claims raised." [15] Because we decided only Torres's out-of-time appeal claim, his "remaining claims were not decided on the merits" and thus, because there were unresolved claims, we did not finally dispose of his application.[16] We also said that granting an out-of-time appeal causes any "remaining substantive claims [to] become premature, and hence, subject to dismissal." [17]

*McPherson* addressed a situation in which the request for an out-of-time appeal in the initial writ application was *denied*, and that request was the only claim in the

prior application. In addressing McPherson's subsequent application, the Court decided that a request for an out-of-time appeal was not a challenge to the conviction and, as a result, it did not trigger the § 4 bar, which contained the "challenging the conviction" requirement.[18] The Court's opinion in *McPherson* could have easily cited *Torres* if the holding in that case were that the subsequent writ bar is *never* triggered by the request for an out-of-time appeal, even if the request is denied. But the Court's opinion in *McPherson* did not mention *Torres* (though it was mentioned by the dissent).[19] The Court in *McPherson* needed to conclude that a request for an out-of-time appeal was not a "challenge to the conviction" in order to avoid the § 4 bar because there clearly was a "final disposition" of McPherson's prior application.

*Ex parte Rodriguez* provides no further support for the view that an 11.072 writ is the appropriate vehicle for an out-of-time PDR. *Rodriguez* held that "[b]ecause applicant's first application was resolved solely on the out-of-time PDR claim, there was no final disposition of a claim that *challenged the conviction*." [20] The parenthetical in *Rodriguez* to the cite to *Torres* explained that because the out-of-time appeal "was the sole basis for disposing of [the] prior application, there was no final disposition *of other claims raised therein*." [21] Notably, the initial application in *Rodriguez* raised multiple claims, only one of which was a request for an out-of-time

---

14. *Torres*, 943 S.W.2d at 474.

15. *Id.* (emphasis added).

16. *Id.*

17. *Id.* at 472.

18. *Id.* at 861.

19. *See McPherson, passim; id.* at 862 (Womack, J., dissenting).

20. 466 S.W.3d at 849 n. 8 (emphasis added).

21. *Id.* (emphasis added).

PDR.[22] At least one of the other claims was a jurisdictional challenge,[23] which clearly was a challenge to the conviction. Because the jurisdictional challenge raised in the first application was not resolved, there was no final disposition of the first application—making *Rodriguez* factually like *Torres*. Nevertheless, *Rodriguez* also cited *McPherson* for the proposition that a "request for [an] out-of-time appeal does not constitute a challenge to the conviction." [24] That is, even if the request for an out-of-time PDR had been the *only* claim in the application, making the disposition of that application a final disposition, the Article 11.07, § 4 bar would still not have been triggered because such a claim did not challenge the conviction.

*Ex parte Martinez*,[25] is equally unhelpful because that opinion is unpublished and has no precedential value. Moreover, it did not hold that an applicant could file an out-of-time appeal claim in an Article 11.072 application. That proposition is found only in a concurring opinion, and that concurrence is problematic, not only for the reasons given here, but also because it suggested to Martinez that he could file a subsequent application and allege a due-process violation resulting from his initial habeas application—a proposition that is inconsistent with authority from this Court.[26]

In summary, I conclude that § 2(b) excludes a request for an out-of-time PDR from Article 11.072 because such a request does not challenge the legal validity of the conviction for which or order in which community supervision was imposed. Therefore, Article 11.072 is not an available vehicle for requesting an out-of-time PDR in applicant's case.

If Article 11.072 is not available, then what does an applicant do? The appropriate remedy would be to file a "Constitutional" writ application *in the trial court.* If the trial court grants relief, then applicant gets to file his out-of-time PDR. If the trial court considers the application but denies relief, then the applicant could appeal that denial to the court of appeals. If the trial court refuses to consider the application, and applicant has filed in the appropriate trial court (the one which imposed his community supervision), *then* he could file a "Constitutional" writ application with this Court.

Richardson, J., concurring.

Applicant filed an original writ of habeas corpus with this Court seeking an out-of-time petition for discretionary review ("PDR") from a judgment imposing community supervision. I concur in the Court's decision to dismiss this original application. I agree that Applicant should have filed his writ application with the trial court.

The majority states that "[w]hen an application does not fall within one of the provisions relating to a certain type of judgment, order, or proceeding, a habeas corpus remedy may nevertheless be available under the Texas Constitution and Ar-

22. *Id.* at 848–49.

23. *Id.*

24. *Id.* at 849 n.8.

25. No. PD–1801–10, 2011 WL 2582199, 2011 Tex.Crim.App. Unpub. LEXIS 490 (Tex.Crim. App. June 29, 2011) (not designated for publication).

26. *Ex parte Kerr*, 64 S.W.3d 414, 420 (Tex. Crim.App.2002) ("Similarly, the second habeas filing dealt solely with a stay of execution and an allegation of ineffective assistance of the original habeas counsel. Applicant is not being restrained because of the conduct of his original habeas counsel.").

ticle 11.05." Although applicant may have sought relief from this Court via a "Constitutional writ," in dismissing such application, I would have taken the extra step to address whether applicant's writ application is one that *does* fall within one of the statutory provisions. I believe applicant's claim for relief in the form of an out-of-time PDR falls under Article 11.072,[1] not under the general constitutional provisions or under Article 11.05.[2] The majority does not specifically mention Article 11.072. Article 11.072, Section 1, provides: "This article establishes the procedures for an application for writ of habeas corpus in a felony or misdemeanor case in which the applicant seeks relief from an order or a judgment of conviction ordering community supervision." Although Article 11.072 § 2(b) does not expressly allow for a writ applicant to seek an out-of-time appeal or PDR, neither does the express wording of Article 11.07.[3] Yet requests for such relief are routinely considered under Article 11.07. If this Court is going to hold that there are certain claims that, although they do not literally "seek relief from a felony judgment," are still cognizable under Article 11.07, it makes sense that this Court should follow that same line of reasoning when interpreting Article 11.072.

The first section of each statute (Article 11.07 and Article 11.072) is similarly worded and defines the scope of the statute. Both articles apply to attacks on a conviction, whether that conviction resulted in confinement or community supervision. Just as Article 11.07 is the proper vehicle through which to seek an out-of-time appeal or PDR where the applicant was sentenced to confinement, I believe that Article 11.072 is the proper vehicle through which to seek an out-of-time appeal or PDR where the applicant was placed on community supervision.[4]

---

1. TEX.CODE CRIM. PROC. art. 11.072.

2. TEX.CODE CRIM. PROC. art. 11.05.

3. TEX.CODE CRIM. PROC. art. 11.07, § 1, provides, "This article establishes the procedures for an application for writ of habeas corpus *in which the applicant seeks relief* from a felony judgment imposing a penalty other than death." (Emphasis added).

4. I would not interpret the subsequent-application provisions in the two articles as being instructive on this issue. It is true that they are worded differently. Article 11.072, § 9(a) begins, "If a subsequent application for writ of habeas corpus is filed *after final disposition of an initial application under this article,* a court may not consider the merits of or grant relief based on the subsequent application unless the application contains sufficient specific facts establishing that ..." (emphasis added). Article 11.07, § 4(a) begins, "If a subsequent application for writ of habeas corpus is filed *after final disposition of an initial application challenging the same conviction,* a court may not consider the merits of or grant relief based on the subsequent application unless the application contains sufficient specific facts establishing that ..." (emphasis added). One could argue that the two phrases, "under this article" in Article 11.072, and "challenging the same conviction" in Article 11.07, denote the difference in interpretations. However, I believe that the key wording is, instead, "final disposition," which is the same in both articles. Filing a request for an out-of-time appeal or PDR under either Article 11.07 or Article 11.072 should not trigger the prohibition against subsequent applications because granting such relief on that type of claim would not be a "final disposition of an initial writ application." In *Ex parte Torres,* 943 S.W.2d 469, 474 (Tex.Crim.App. 1997), we held that, "[w]hile the Legislature limited applicants to one bite of the apple, they clearly contemplated that that bite would be a full one." Granting (or denying, for that matter) a writ applicant's request for an out-of-time appeal under either article, then later finding that the subsequent writ bar has been triggered, is not affording that writ applicant the full bite. *See also Ex parte Rodriguez,* 466 S.W.3d 846, 849 n. 8 (Tex.Crim.App. June 17, 2015) (mot. for reh'g. overruled Aug. 26, 2015) (noting that, "because applicant's first application was resolved solely on the out-of-time PDR claim, there was no final disposition of a claim that challenged the conviction,

This Court has indicated in previous opinions that out-of-time appeals are available under Article 11.072. In *Ex parte Martinez*,[5] the appellant filed an Article 11.072 application for habeas corpus relief. The trial court signed an order denying the application. The appellant's appeal was dismissed by the appellate court as untimely filed. On discretionary review from the appellate court, this Court held that the notice of appeal was, indeed, untimely filed and affirmed the decision of the court of appeals. The Court's majority opinion in *Martinez* noted, however, that "[t]he appellant's appeal is dismissed without prejudice to his ability to file future 11.072 writ applications in this matter."[6] It was further explained in the concurring opinion that the appellant "may file a subsequent writ application under Article 11.072 alleging the due-process violation— the deprivation of his right to appeal—that had not yet occurred at the time that he filed his original writ application, and request reconsideration of his original writ to remedy that second purported constitutional error. *This is akin to our Article 11.07 writ process of granting an out-of-time appeal when either the appellate attorney fails to properly file a notice of appeal or there is a 'breakdown in the system' that prevents the filing of a proper notice of appeal.*"[7]

Although not in this same context, this Court has previously acknowledged that "[o]ften, it is better to be consistent than right."[8] I believe that there should be consistency in how Articles 11.07 and 11.072 are interpreted with regard to the cognizability of writ applications seeking out-of-time appeals and their impact vis-a-vis the subsequent writ bar. Therefore, I believe that, just as Article 11.07 is the proper vehicle to request an out-of-time appeal or PDR from a judgment of confinement, Article 11.072 is the proper vehicle to request an out-of-time appeal or PDR from a judgment or order imposing community supervision.[9] And, I agree with the majority that a trial court judge has the authority to grant an out-of-time appeal or PDR.[10]

With these comments, I concur in the Court's dismissal of Applicant's original writ application because I agree that it should have been filed with the trial court.

Johnson, J., dissenting.

Today, this Court decides that the servant may dictate to the master how the master's authority shall be invoked. I conclude that neither the statutes nor the state constitution permit such an interpretation and that prior cases cited to support

so the current application is not barred under Tex.Code Crim. Proc. Art. 11.07 § 4.").

5. No. PD–1801–10, 2011 WL 2582199 (Tex. Crim.App.2011) (not designated for publication).

6. *Id.* at *1.

7. *Id.* (Cochran, J., concurring) (emphasis added); *See also, Ex parte Parodi*, No. PD–1740–11, 2012 WL 669981 (Tex.Crim.App.2012) (not designated for publication).

8. *Malik v. State*, 953 S.W.2d 234, 236 (Tex. Crim.App.1997).

9. Applicant filed his Application for An Original Writ of Habeas Corpus on February 3, 2015. He alleges that Article 11.072 does not apply because "as of this date, Petitioner is not on and has not been on community supervision (imposition of the probated sentence was suspended so long as the case was on appeal)." However, Mandate issued on January 15, 2015. Therefore, Applicant's appellate process was, at that time, concluded, and his period of community supervision would have begun.

10. *Rodriguez v. Court of Appeals, Eighth Supreme Judicial Dist.*, 769 S.W.2d 554, 558–59 (Tex.Crim.App.1989).

such an interpretation were wrongly decided.

The Court's opinion correctly notes that Article V of the Texas Constitution "confers power on this Court to issue writs of habeas corpus '[s]ubject to such regulations as may be prescribed by law.'" It then cites to Article 11.05 of the Texas Code of Criminal Procedure as the source of the authority of various courts to issue the writ of habeas corpus as may be prescribed by law. However, it skips over Article 11.01, "What Writ Is."

> The writ of habeas corpus is the remedy to be used when any person is restrained in his liberty. It is an order issued by a court or judge of competent jurisdiction, directed to any one having a person in his custody, or under his restraint, commanding him to produce such person, at a time and place named in the writ, and show why he is held in custody or under restraint.

This is close to the common-law writ of habeas corpus, "that you shall have the body." It was available to test the legality of the restraint, to challenge jurisdiction, or assert the right to bail.

> The writ of habeas corpus, by which the legal authority under which a person may be detained can be challenged, is of immemorial antiquity. After a checkered career in which it was involved in the struggles between the common-law courts and the Courts of Chancery and the Star Chamber, as well as in the conflicts between Parliament and the crown, the protection of the writ was firmly written into English law by the Habeas Corpus Act of 1679. Today it is said to be "perhaps the most important writ known to the constitutional law of England...."

Charles Alan Wright, *The Law of Federal Courts*, 53, at 350 (5th ed.1994) (quoting *Secretary of State for Home Affairs v. O'Brien*, [1923] A.C. 603, 609).

The writ, "as may be prescribed by law," applies to an assertion of illegal restraint. It is in that context that the prescribing law grants authority to the district courts and county courts. But our law chooses the specific over the general,[1] and clearly, the procedures "prescribed by law" for a challenge from a felony conviction found in Article 11.07 are more specific: "Sec. 1. This article establishes the procedures for an application for writ of habeas corpus in which the applicant seeks relief from a felony judgment imposing a penalty other than death." Article 11.071 states emphatically that it controls procedures in death-penalty cases: "Sec. 1. Notwithstanding any other provision of this chapter, this article establishes the procedures for an application for a writ of habeas corpus in which the applicant seeks relief from a judgment imposing a penalty of death." As Judge Richardson points out, Article 11.072 sets out the procedures for a writ filed by a person who is on community supervision, and Articles 11.08 and 11.09 specify where writ applications should be filed. Both of those articles contain language that make Article 11.05 writs applicable only before conviction; Article 11.08 states, "If a person is confined after indictment on a charge of felony ...," while Article 11.09 states, "If a person is confined on a charge of misdemeanor...." Final convictions in misdemeanor cases have no specific procedures and thus seem to be left to the general statutes.

Article 11.06 is also within the context of Article 11.01, and it imposes a second limit on the authority of trial courts to grant an out-of-time petition: "Before indictment found, the writ may be made returnable to

---

1. *See, e.g., State v. Wachtendorf*, 475 S.W.3d 895, 900 (Tex.Crim.App.2015).

any county in the State." This case is far beyond "before indictment found," so I conclude that the writ described in Article 11.01 is no longer "returnable to any county in the State." After an indictment or information is filed, Articles 11.08 and 11.09 control to which county a writ is returnable.

Nowhere in any of these statutes do I find any indication that the legislature intended the trial courts, of any description, to have the authority to grant relief on a writ of habeas corpus that seeks relief from administrative rules and regulations. In this case, applicant seeks to be allowed to file an untimely petition for discretionary review, even though the Rules of Appellate Procedure do not allow him to do so. The Rules applicable here are not "regulations ... prescribed by law"; they are rules, which this Court has written as a means by which to manage its docket. Management of this Court's docket should not be ceded to trial courts.

Statutory interpretation aside, I find it very curious that the Court's opinion authorizes a trial court to tell this Court what to do in regard to management of this Court's docket. A trial court can certainly recommend to this Court that we grant or deny a request for relief, and every year we review thousands of applications for a writ of habeas corpus in which the trial court has made such a recommendation, including hundreds in which the relief requested is an out-of-time filing. We do well to consider a recommendation from the person who heard the testimony and was in a position to make judgments about credibility. Still, the authority to make a decision lies with this Court and no other.

The Court's opinion concedes that the trial judge's order to this Court to permit an untimely filing "does not, in fact order us to do anything." We can ignore it. So why are we holding that the trial court can, and presumably should, perform a futile act-an act we all know axiomatically that the law does not require? The Court's opinion brushes this question aside by asserting that such an order "merely resets the applicable appellate time table." But such a holding still permits the trial court to dictate to this Court what time limits, set out in the Texas Rules of Appellate Procedure, this Court will observe. Presumably, we can ignore the "reset" appellate time-table, too. If the orders of trial courts can be so easily ignored, why is this Court telling them that they have authority to order this Court to do an act that this Court can, with impunity, refuse to do? Such reasoning strains the definition of logic. I would find that the trial courts may issue and grant writs of habeas corpus that are created and governed by statute, but they may not do so if the cause is created and governed by rule. Because the Court's holding permits the trial court to interfere with the management of this Court's docket, I respectfully dissent.