

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. WR-93,354-02

## In re BRENT SMITH, Relator

## ON APPLICATION FOR A WRIT OF PROHIBITION
## AGAINST THE 345TH DISTRICT COURT
## IN TRAVIS COUNTY

**KELLER, P.J., delivered the opinion of the Court in which HERVEY, RICHARDSON, NEWELL, KEEL, WALKER, SLAUGHTER, AND MCCLURE, JJ., joined. YEARY, J., concurred.**

## OPINION

A number of defendants in misdemeanor cases arising in Kinney County have filed habeas applications in a district court in Travis County (the District Court). The District Court has permitted those applications to remain pending after granting relief on one of them. Relator, the Kinney County Attorney, seeks to prohibit the District Court from considering or resolving the remaining applications. Because a district court in Travis County is not a local court for these misdemeanor cases arising out of Kinney County, the District Court is required to refrain from resolving the merits in these habeas cases. Consequently, we hold that Relator is entitled to the issuance of a writ of prohibition.

# I. BACKGROUND

Cases arising from Governor Abbot's "Operation Lone Star" have resulted in thousands of misdemeanor arrests in Kinney County. Texas Rio Grande Legal Aid (representing the real parties in interest) claims that 2,722 of these cases were charged in Kinney County. Hundreds of these arrestees have filed habeas applications with a district court in *Travis* County challenging their detentions. One of those arrestees has obtained relief from the District Court.[1] In that action, the District Court refused to allow the Kinney County Attorney to represent the State and designated the Travis County District Attorney (TCDA) as the State's representative.[2] The TCDA recommended that relief be granted to the habeas applicant.[3] The cases of 438 other arrestees, the real parties in interest, represented by Texas Rio Grande Legal Aid, are still pending. The real parties in interest assert that 73 of the 438 habeas applicants have no charging instrument pending against them. They claim that all 438 have been released from custody and are awaiting arraignment or pretrial hearings.

Relator, the Kinney County Attorney, contends in an application for a writ of prohibition that a district court in Travis County has no authority to decide the merits of a habeas action for an offense prosecuted in a different county.[4] As amicus curiae, the State Prosecuting Attorney contends that the District Court lacked jurisdiction because the habeas applicants should have availed

---

[1] *See State v. Curipoma*, 652 S.W.3d 74, 77 (Tex. App.—Austin 2022, pet. granted).

[2] *Id.*

[3] *Id.*

[4] Relator also requests mandamus relief but has failed to satisfy the requirement that he first seek relief from a court of appeals. *See Padilla v. McDaniel*, 122 S.W.3d 805 (Tex. Crim. App. 2003). That requirement does not apply to the prohibition relief Relator is seeking because only this Court can grant such relief. *In re State ex rel. Best*, 616 S.W.3d 594, 599 & n.3 (Tex. Crim. App. 2021).

themselves of the remedy provided by Article 11.09, which provides for an application to a local county court in a misdemeanor case.

The real parties in interest contend that they are "restrained" but not "confined," so that Article 11.09 is not an available remedy. Alternatively, they contend that Article 11.09 is not an exclusive remedy. They further contend that, regardless of whether Article 11.09 is available, no statute precludes the District Court from exercising jurisdiction, and they argue that Article 11.06 of the Code of Criminal Procedure permits it. The TCDA agrees with the real parties in interest but also claims that we lack jurisdiction and that Relator has failed to preserve his complaint.[5]

## II. ANALYSIS

### A. Jurisdiction and Preservation

The TCDA claims that we lack jurisdiction because no writs of habeas corpus have yet issued in the underlying habeas proceedings and that any ruling by us would be an advisory opinion. Prohibition can issue "only to prevent the threatened commission of a future act, and not to undo an act performed," and it cannot be used "to review an act which has already been performed, or to annul or correct proceedings already terminated."[6] Prohibition is necessarily directed at anticipated future action. The proceedings at issue are currently pending before the District Court. That court could have dismissed all of these proceedings on the basis that they involve offenses alleged to have occurred in a different, non-adjacent county, but it did not do so. In fact, the District Court has

---

[5] We ordered the judge of the District Court to respond and directed it "not to take any action on any pending cases on any pending habeas applications where the underlying offense occurred in Kinney County." The District Court acknowledged our order, said it had not taken any action since the order issued, and said that it would continue to comply with the direction not to take any action until further order from our Court.

[6] *State ex rel. Millsap v. Lozano*, 692 S.W.2d 470, 482 n.19 (Tex. Crim. App. 1985).

already granted habeas relief in a case arising out of Kinney County, and in doing so refused to allow the Kinney County Attorney to represent the State. By granting relief to one of the Kinney County applicants, the District Court has signaled its belief that it is proper for it to resolve cases arising out of Kinney County.

The TCDA further claims that, because the various applicants have raised facial and as-applied challenges to the Operation Lone Star enforcement regime, the circumstances facing each applicant may differ. The TCDA contends that "it was individually evaluating, and intended to separately respond to each of the underlying habeas applications at issue to determine whether relief is appropriate." But Relator's position is that none of these applications should be resolved in Travis County because of an element common to all of them—that they arose from offenses committed in Kinney County. If the Relator's position is correct, then piecemeal resolution of these cases in Travis County would be improper. We conclude that our prohibition jurisdiction has been invoked.

The TCDA claims that Relator has failed to preserve his complaint because he has not given the District Court the opportunity to rule on his complaint. Relying upon a mandamus case from the Texas Supreme Court,[7] the TCDA argues that a relator must make a predicate request for relief from the respondent before resorting to mandamus from a higher court. Assuming, without deciding, that a predicate-request requirement imposed by our sister court in mandamus cases applies to a prohibition action before us, we nevertheless find the TCDA's argument unavailing.

The TCDA acknowledges that there are exceptions to the predicate-request requirement but argues that none have been shown to apply here. We disagree. The Supreme Court has relaxed the predicate when the circumstances confirm that "the request would have been futile and the refusal

---

[7] *In re Coppola*, 535 S.W.3d 506, 510 (Tex. 2017).

little more than a formality."[8] The District Court has already granted relief on a Kinney County case, and in doing so, refused to allow the Kinney County Attorney to represent the State. It is difficult to see how the Kinney County Attorney can even make a predicate request, given the earlier holding precluding him from representing the State in a habeas action filed in Travis County. Even if that hurdle could be surmounted, it appears to us to be a foregone conclusion that the District Court will continue to decide the Kinney County cases absent our intervention.

### B. Prohibition Requirements

Prohibition relief can be obtained only if the relator has a clear right to the relief sought and no other adequate legal remedy.[9] Even when a legal remedy is available, it can be "so uncertain, tedious, burdensome, slow, inconvenient, inappropriate, or ineffective as to be deemed inadequate."[10]

With respect to whether a clear right to relief has been shown, we have said, "Even when the facts are undisputed, the extraordinary mechanism of a writ of prohibition or mandamus will not lie to resolve a hotly contested unsettled question of law."[11] But a ministerial duty, and therefore a clear right to relief, can sometimes appear in cases of first impression.[12] An unambiguous statute can by itself create a ministerial duty, but a ministerial duty can also be found "when 'the combined weight

---

[8] *In re Perritt*, 992 S.W.2d 444, 446 (Tex. 1999).

[9] *In re McCann*, 422 S.W.3d 701, 704 (Tex. Crim. App. 2013).

[10] *In re State ex rel. Wice v. Fifth Judicial Dist. Court of Appeals*, 581 S.W.3d 189, 194 (Tex. Crim. App. 2018).

[11] *Simon v. Levario*, 306 S.W.3d 318, 321 (Tex. Crim. App. 2009) (internal quotation marks and brackets omitted). *See also In re Medina*, 475 S.W.3d 291, 305 (Tex. Crim. App. 2015) ("A writ of prohibition is not the proper vehicle to settle unsettled law.").

[12] *In re State ex rel. Ogg*, 618 S.W.3d 361, 363 (Tex. Crim. App. 2021).

of our precedents clearly establishes' the proposition of law on which relief is predicated."[13]  The weight-of-precedent finding of a ministerial duty can occur when a lower court's action flies in the face of legal principles that are rightly characterized as foundational, being basic to the system and longstanding.[14]

### C. No Adequate Remedy At Law

The only remedy at law would be an appeal, if relief is granted.  It is unclear at this juncture whether the Kinney County Attorney could even avail himself of that remedy if the trial court refuses to permit him to represent the State.[15]  Even assuming that appeal is available, the Kinney County Attorney would have to wait for the District Court to resolve each case and then appeal it. "[P]otential review at a later time is not always or automatically an adequate remedy."[16]  The later remedy of appeal is generally inadequate when the issue before us implicates the ability of a trial court to consider the case at all.[17]  That is true here, where the question is whether a district court in Travis County can even review claims made in a case arising in Kinney County.  Moreover, delaying review of this issue until appeal could conceivably result in the piecemeal review of hundreds of

---

[13]  *Id.*

[14]  *See id.* at 365 (self-evident that a statute allowing the modification of procedures in an emergency cannot be used to override basic jurisdictional principles or a principle as established as the right to a jury trial).

[15]  *See Curipoma*, 652 S.W.3d at 80 (dismissing Kinney County Attorney's appeal).

[16]  *Greenwell v. Court of Appeals for the Thirteenth Judicial Dist.*, 159 S.W.3d 645, 648 (Tex. Crim. App. 2005).

[17]  *See id.* at 649 (citing, in support of its mandamus holding, the analogous situation of certain double-jeopardy claims raised in pretrial habeas where the remedy of appeal after trial is inadequate because protection against double jeopardy required review before jeopardy exposure occurs).

cases that the district court should not be considering due to the location in which these cases arose. Even if the Kinney County Attorney's remedy can be said to be "certain," it is tedious, burdensome, slow, inconvenient, inappropriate, and to some degree ineffective in affording the relief sought. We conclude that Relator does not have an adequate remedy at law.

## D. Clear Right to Relief

### 1. *Local Resolution of Claims Required*

Assuming the truth of the factual assertions of the real parties in interest and their legal assertion that they are not "confined," the real parties in interest have no avenue for relief under the statutes that authorize habeas applications for specific types of cases. None of these habeas actions involve a final felony conviction, a conviction in which the death penalty was assessed, a case in which probation was imposed, or a felony case after indictment.[18] And assuming the real parties in interest are correct that they are merely "restrained" rather than "confined," then they cannot obtain relief under Article 11.09, which applies in misdemeanor cases but only to "confined" individuals.[19] Under these assumptions, the only avenue for relief available to the real parties in interest is an original habeas action under Article 11.05, also known as a "Constitutional writ."[20]

Article 11.05 provides:

---

[18] *See* TEX. CODE CRIM. PROC. arts. 11.07, 11.071, 11.072, 11.08.

[19] *See id.* art. 11.09 ("If a person is *confined* on a charge of misdemeanor, he may apply to the county judge of the county in which the misdemeanor is charged to have been committed, or if there be no county judge in said county, then to the county judge whose residence is nearest to the courthouse of the county in which the applicant is held in custody.") (emphasis added).

[20] *Ex parte Valdez*, 489 S.W.3d 462, 464 (Tex. Crim. App. 2016) ("A habeas application that is not governed by one of the provisions applying to specific types of judgments, orders, or proceedings is often referred to as a 'Constitutional writ' or an 'Article 11.05 writ.'"); TEX. CODE CRIM. PROC. art. 11.05.

The Court of Criminal Appeals, the District Courts, the County Courts, or any Judge of said Courts, have power to issue the writ of habeas corpus; and it is their duty, upon proper motion, to grant the writ under the rules prescribed by law.[21]

Back in 1885, our predecessor court recognized that "one of the cardinal principles of our system of government" was "to *localize* the administration of the law,—to try causes in the county, and before the court, having the primary jurisdiction thereof."[22] We did not question the *jurisdiction* of our Court to resolve a habeas case, even though the applicant had not applied for habeas relief "with the local court or judge in the first instance," but we held that we had discretion to refuse the writ in such cases "and that it *ought* to be refused in all cases where no valid reason is shown why the local court or judge was not applied to."[23] Accordingly, as early as 1885, we indicated that abstention from considering a habeas application was the appropriate course of action for our Court when the habeas applicant had not applied to the local court for relief.

In *Valdez*, we reiterated that longstanding rule, holding that our Court would abstain from considering an original habeas writ under Article 11.05 absent extraordinary circumstances.[24] We further held that, to meet a showing of extraordinary circumstances sufficient to justify our Court considering a writ, a habeas applicant ordinarily "must first seek appropriate relief at the appropriate trial-level court."[25] In addressing what was a postconviction writ, we said that "the court of

---

[21] TEX. CODE CRIM. PROC. art. 11.05.

[22] *Ex parte Lynn*, 19 Tex. Ct. App. 120, 121 (1885) (emphasis in original).

[23] *Id.* at 121-22 (emphasis added).

[24] 489 S.W.3d at 464-65.

[25] *Id.* at 465.

conviction is ordinarily the appropriate court in which to first seek relief."[26]  But as *Lynn* explained,

the principle that the local court should first be resorted to was not limited to the post-conviction

setting:

> Or, in cases like the one before us, where indictment has not been presented, we would be compelled to have the applicant and witnesses brought before us regardless of distance and expense, in the most trivial case of misdemeanor, or assemble our court in some other county, to hear the case.  The proposition is ridiculous, and is contrary to the intent of the statute, and to the adjudications of courts upon the question.[27]

In several habeas statutes, the legislature has expressed a strong interest in local resolution

of habeas matters by imposing a geographic restriction on a trial-level court's ability to issue a writ

or to decide the merits of a habeas application.[28]  *Lynn* cited some of the predecessor provisions to

these current statutes and remarked that they "clearly indicate that the application for the writ should,

in the first instance, be made to the local judge or court competent to grant the same, if there be such

judge or court, and if there be none such, then to the nearest judge or court competent to grant the

---

[26] *Id.  See also Ex parte Rodriguez*, 169 Tex. Crim. 367, 367-68, 334 S.W.2d 294, 294-95 (1960) ("[I]t has been the uniform practice of this court for many years to require that resort be first had to application for habeas corpus to the judge of the trial court or other county court, county court at law or district judge of the county for relief."); *Ex parte Fitzpatrick*, 167 Tex. Crim. 376, 377, 320 S.W.2d 683 (1959) ("No reason appears why a district judge in Potter or Randall County cannot hear the matter and grant such relief as relator may show himself entitled to.").

[27] 19 Tex. Ct. App. at 122.  The statute referred to was the statute involving persons confined on a charge of misdemeanor.  *Id.* at 121.

[28]  TEX. CODE CRIM. PROC. arts. 11.07, § 2 ("in the county where the offense has been committed"), 11.08 ("to the judge of the court in which he is indicted" or in some situations the "nearest" judge to the courthouse of indictment), 11.09 ("to the county judge of the county in which the misdemeanor is charged to have been committed" or in some situations the "nearest" judge to the relevant courthouse), 11.10 ("in the county where the offense is charged in the indictment or information"), 11.16 ("within his [the judge's] district or county").

same."[29]

Although the real parties in interest have not sought habeas relief with this Court, the abstention concerns articulated in *Lynn* and *Valdez* with respect to our Court apply with even greater force to a trial-level court that does not have jurisdiction over the geographic location in which the case arose. Our court has jurisdiction over the entire state, and thus at least some interest in habeas actions arising anywhere in Texas. The same cannot be said of a trial court of a different geographic location than the one in which the case arose.

Assuming, without deciding, that a trial court would even have jurisdiction to resolve the merits of an Article 11.05 action for an offense arising outside the court's geographic borders, the circumstances permitting that jurisdiction to be exercised would be rare. Perhaps unusual circumstances—such as the long-term unavailability or serious backlog of courts in the county of the charges—would permit a merits review in an *adjacent* county.[30] Maybe a truly catastrophic event that made a court in a non-adjacent county the *nearest* court capable of doing business would permit that court, during the pendency of the crisis, to handle such habeas applications from the non-adjacent county. And a habeas application might be appropriate in a non-local court in a post-charging-instrument situation if venue has been transferred to that court. But absent these kinds of unusual circumstances or specific statutory authority, a trial court should never consider the merits of a habeas application for an offense arising outside its geographic boundaries, even assuming it had

---

[29] 19 Tex. Ct. App. at 121.

[30] Articles 11.08 and 11.09 contemplate certain circumstances in which a court in a county "nearest" the local court can issue the writ, *see supra* at n.28, but even then, the writ under those circumstances must be made returnable in the county of the local court. *See* TEX. CODE CRIM. PROC. art. 11.10.

jurisdiction to do so.

The real parties in interest cite *State ex rel. Rodriguez v. Onion* for the proposition that Article 11.09 is "permissive, not mandatory, and is therefore merely advisory in nature."[31] In *Onion*, the Court held that a person confined on a misdemeanor did not have to employ Article 11.09, but could employ Article 11.05 and file with a district court.[32] The issue in that case, however, was simply whether a misdemeanor habeas applicant could have his claim considered in district court instead of county court. The Court did not suggest that consideration by a court in a different county would be permissible.[33]

The real parties in interest also cite cases suggesting that this Court has approved of district courts issuing pretrial habeas writs in distant counties. But *issuance* of the writ is a preliminary question separate from deciding the *merits*, and those same cases indicate that a distant court would err to decide the merits.[34] At best, these cases would support a conclusion that a distant court could

---

[31] 741 S.W.2d 433, 434 (Tex. Crim. App. 1987).

[32] *Id.*

[33] *See id.* at *passim*. A district court will sometimes have occasion to impose a conviction and sentence for a misdemeanor offense within its geographic location. *See* TEX. CODE CRIM. PROC. art. 4.06. This at least arguably gives a district court more authority over a misdemeanor case within its geographic area than would inhere in a geographically distant court. Even so, abstention concerns indicated in *Valdez* might still be applicable. We need not decide that issue here.

[34] *See e.g. Ex parte Rubison*, 170 Tex. Crim. 314, 314, 340 S.W.2d 815, 816 (1960) (A judge in Dallas County "granted the application for habeas corpus" but upon learning the defendant was under indictment in Ector County, "it became his duty . . . to make the writ returnable to Ector County."); *Stakes v. Rogers*, 139 Tex. 650, 653, 165 S.W.2d 81, 83 (1942) ("duty of the judge granting the writ, upon proper showing and request, to make same returnable to the judge of the county where the offense covered by the indictment was committed"); *Ex parte Overcash*, 61 Tex. Crim. 67, 68, 134 S.W. 700, 700 (1911) ("[T]he writ was properly granted, but the case was improperly tried in Jones County, and . . . the writ should have been made returnable to Throckmorton County before the district judge of the district in which Throckmorton County is

issue the writ but would then have to transfer the case to a local court for a merits determination.

### 3. Article 11.06 Does Not Apply

The real parties in interest claim that the habeas applications can be considered under Article 11.06. Article 11.06 provides: "Before indictment found, the writ may be made returnable to any county in the State."[35] The real parties in interest argue that, because there is no indictment in any of these cases, the cases qualify as "before indictment found," thus authorizing the consideration of the habeas applications in any Texas county. That is incorrect.

To say that a case has the status of being "before" indictment, it is not enough to simply say that an indictment has not been returned. "Before," when used in connection with an event, denotes that the event is, in some sense, expected to occur.[36] If no one expects an indictment to be returned in a particular type of case, then it makes no sense to say that the proceedings are "before" indictment.

Indictments are required only in felony cases.[37] Misdemeanor cases are usually prosecuted by information.[38] The real parties in interest concede that an information has been returned in 365

---

situated"). Moreover, there were indictments in the cited cases, so they are unlike the situation before us. At any rate, the cited cases do not support resolving the merits of a habeas action in a distant county.

[35] TEX. CODE CRIM. PROC. art. 11.06.

[36] *See Before*, WEBSTER'S NEW WORLD COLLEGIATE DICTIONARY (4th ed. 2000) (prep. entry 1) ("ahead of in time, space, order, rank, or importance").

[37] *See* TEX. CONST., Art. I, § 10 (". . . and no person shall be held to answer for a criminal offense, unless on an indictment of a grand jury, except in cases in which the punishment is by fine or imprisonment, otherwise than in the penitentiary . . .").

[38] *Studer v. State*, 799 S.W.2d 263, 286 (Tex. Crim. App. 1990).

of their cases. An indictment is not expected in those cases because an information is on file. By no stretch of the imagination can it be said that those cases are "before" an indictment that everyone knows is not coming. But even for the remaining cases in which no information is pending, an indictment is still not expected, because, as explained above, misdemeanor cases are usually prosecuted by information. And because an indictment is not required, it would be speculative to suggest that an indictment would be returned if a misdemeanor case were to go forward.[39]

And other habeas statutes provide context clearly showing that Article 11.06 is intended to apply only to felony cases. Section 2 of Article 11.07 says, "After indictment found in any felony case, . . . and before conviction, the writ must be made returnable in the county where the offense has been committed."[40] Article 11.08 says that, "after indictment on a charge of felony," a confined person "may apply to the judge of the court in which he is indicted."[41] Article 11.09, by contrast,

---

[39] The real parties in interest contend that indictment of misdemeanors was a common practice at the time the first predecessor to Art. 11.06 was enacted in 1856. Even if that assertion is true, the significance of it is unclear. As we explain later, there are significant differences between the 1856 habeas scheme and the current habeas scheme, which began with statutes enacted in 1965. But the 1856 scheme itself differs from what came before it because 1856 appears to be the first time the legislature passed a statute permitting informations for all misdemeanors. *See* TEX. CODE CRIM. PROC. art. 391 (1856) ("All misdemeanors may be presented by either information or indictment."). Before that, a patchwork of statutes dictated whether particular misdemeanors could be charged by information or had to be charged by indictment. For example, in the *Needham v. State* case cited by the real parties in interest, the statute at issue said, "[A]ny person or persons who shall violate any law or laws, requiring the payment of license taxes, shall be deemed guilty of a misdemeanor, and, *on indictment by the grand jury*, and conviction by the petit jury, shall forfeit and pay such sum of money as shall be double the amount of the license tax, which such person or persons, so offending, were liable to pay." 1 Tex. 139, 140 (1846) (emphasis added). Similarly, the "gaming" cases cited by the real parties in interest involved statutes that condition the punishment for the misdemeanor offense "on conviction . . . by indictment." *See* TEX. STAT. arts. 441, 444, 563, 566, 1464, 1467, 1474, 1477 (Hartley 1850).

[40] TEX. CODE CRIM. PROC. art. 11.07, § 2.

[41] *Id.* art. 11.08.

applies to misdemeanor cases and contains no language regarding the return of an indictment.[42] And Article 11.10 refers to "the two preceding Articles"—applying to both felonies and misdemeanors—and talks about the judge issuing a writ returnable "in the county where the offense is charged in the indictment *or information* to have been committed."[43] These statutes support the conclusion that the legislature contemplated an indictment only in connection with a felony case, and that Article 11.06 does not apply in misdemeanor cases. Given the language of Article 11.06 and the surrounding statutes, we conclude that Article 11.06 is unambiguously inapplicable to misdemeanor cases.

The real parties in interest claim that their construction of Article 11.06 is supported by the historical context of its first predecessor, enacted in 1856. The language of the 1856 predecessor statute, Article 123, is identical to the language of Article 11.06.[44] The real parties in interest claim that other provisions of the 1856 Code of Criminal Procedure make clear that restrictions on the power to consider a habeas application depended on whether there was grand jury action and not on whether the offense was a felony or a misdemeanor. In support of this claim, they cite Article 60 of the 1856 Code, which conferred upon a district court the power to "issue" a habeas writ whether the person detained was "within or out of his district" and "has been indicted or not."[45] They also cite

---

[42] *Id.* art. 11.09.

[43] *Id.* art. 11.10 (emphasis added).

[44] *See* TEX. CODE CRIM. PROC. art. 123 (1856).

[45] *Id.* art. 60. The power to "issue" the writ was a preliminary determination, as discussed earlier, and what court could resolve the merits depended on other laws. *See id.* (The court to "make such order on the *return* of the writ as the law and the facts of the case may require.") (emphasis added).

Article 124 of that Code, which provided, "After indictment found, the writ must be made returnable in the county where the offence has been committed."[46] One could also look to Article 125, which permitted a confined person, after indictment, to apply for habeas relief to the district court in the district in which he was indicted, or if there was no judge in that district, to the nearest court.[47] Finally, one could look to Article 126, which instructed a judge who received an application under Article 125 to, among other things, make the writ returnable in the county where the offense was charged.[48] Considering these prior laws together would suggest that the predecessor to Article 11.06 (Article 123) was in fact intended to embrace all cases in which an indictment was lacking rather than only those that could be said to be "before" an indictment.

But even assuming the real parties in interest are correct in their construction of Article 123, that does not mean the same construction applies to Article 11.06. A court *must* construe a statute in accordance with the plain meaning of its text unless the text is ambiguous or the plain meaning leads to absurd results that the legislature could not have possibly intended.[49] That rule of

---

[46] *Id.* art. 124 (adding at the end, "on account of which the applicant stands indicted").

[47] *Id.* art. 125 ("In all cases where a person is confined on a criminal accusation, and indictment has been found against him, he may apply to the Judge of the District Court for the district in which he is indicted, or if there be no Judge within the district, then to the Judge of any district whose residence is nearest to the court-house of the county in which the applicant is held in custody.").

[48] *Id.* art. 126 ("When application has been made to a Judge, under the circumstances set forth in the preceding Article, it shall be his duty to appoint a time when he will examine the cause of the applicant, and issue the writ returnable at that time, in the county where the offence is charged in the indictment to have been committed. He shall also specify some place in the county where he will hear the application.").

[49] *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991).

construction is a constitutional command.[50] We have already held that the text of Article 11.06 is unambiguous with respect to whether the statute encompasses misdemeanors. And there is nothing absurd in declining to construe Article 11.06 to allow a misdemeanor habeas application to be considered in any county in the state. The language of former provisions is an extratextual factor,[51] which we are not allowed to consider absent ambiguity or absurd results in the text of the statute before us.

Article 11.06 should be considered in the context of the statutory scheme with which it was enacted, but that statutory scheme was *not* the scheme enacted in 1856; it was the scheme enacted in 1965. There are substantial differences between the two. The current statutory scheme has no counterpart to former Article 60. Former Articles 124 through 126 are predecessors to current statutes, but there is a material difference between the predecessors and the current statutes. Former Articles 124 and 125 refer to the existence of an indictment but not to the case being a felony, while the current statutes, Articles 11.07, § 1, and Article 11.08, refer to both the existence of an indictment and the felony status of the case. Former Article 126 refers to Article 125 and mentions "the indictment,"[52] while current Article 11.10 refers to *two* preceding articles, one for felonies and one for misdemeanors, and mentions both types of charging instruments (indictment or information). The second article referred to by current Article 11.10 is Article 11.09, relating to misdemeanor writs, which *did not exist* in the 1856 scheme.

The real parties in interest also argue that their construction of Article 11.06 is required by

---

[50] *Id.* at 785-86.

[51] *Williams v. State*, 603 S.W.3d 439, 445 (Tex. Crim. App. 2020).

[52] *See supra* at n.48.

Article 11.04, because it requires constructions that are favorable to habeas applicants. Article 11.04 provides: "Every provision relating to the writ of habeas corpus shall be most favorably construed in order to give effect to the remedy, and protect the rights of the person seeking relief under it."[53] This statute provides a favorable rule of construction for habeas applicants, but it cannot require us to construe an unambiguous statute in a way that conflicts with its text.[54] As we explained above, to say that the misdemeanor cases here are "before" indictment is to construe the word "before" to mean something other than what it plainly means. Article 11.04 does not require us to do that.

### 3. Conclusion

We conclude the district court in Travis County is required to refrain from resolving the merits of habeas applications for misdemeanor cases arising in Kinney County. Consequently we grant Relator's application for a writ of prohibition.

Filed: December 7, 2022

Publish

---

[53] TEX. CODE CRIM. PROC. art. 11.04.

[54] *See Ex parte White*, 506 S.W.3d 39, 46-47 (Tex. Crim. App. 2016) (Art. 11.04 cannot be used to impose an "accuracy over finality" policy rationale contrary to unambiguous statutory language and where other provisions allow for finality to prevail over accuracy in some circumstances.).