

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

---

### NO. WR-82,168-02

---

### EX PARTE TOMMY NATHANIEL TAYLOR, Applicant

---

### ON APPLICATION FOR WRIT OF HABEAS CORPUS CAUSE NO. 631602 IN THE 179th DISTRICT COURT FROM HARRIS COUNTY

---

**NEWELL, J., filed a dissenting opinion in which RICHARDSON and SLAUGHTER, JJ., joined.**

Applicant was convicted of aggravated robbery and possession of a controlled substance in 1994.[1]  He was sentenced to fifty years in prison on the aggravated robbery case and twenty years on the possession case.  He sought to appeal both convictions, but his attorney

---

[1] Applicant was originally placed on deferred adjudication for possession of a controlled substance, but his commission of the offense of aggravated robbery led to his adjudication for the possession offense.

failed to include the cause number for the possession case in his notice of appeal. So, in 1995, Applicant filed an application for a writ of habeas corpus alleging ineffective assistance of counsel.

The record of the proceedings below reveals that the original habeas judge held an evidentiary hearing regarding the issue of whether trial counsel was ineffective for failing to include the cause number for Applicant's possession case in the notice of appeal. The habeas judge made an oral finding on the record that trial counsel was ineffective on this point and indicated he would recommend habeas relief in the form of an out-of-time appeal. However, the habeas judge never entered written findings and conclusions to that effect.

For reasons unknown, we did not receive this application until twenty-two years later. The Harris County District Clerk discovered that the writ application had not been forwarded on to this Court. This was after Applicant had already served the twenty-year sentence for which he sought habeas corpus relief.[2] Today, the Court votes to remand Applicant's writ application to develop an evidentiary record unrelated to and unnecessary to resolve Applicant's claims.

---

[2] During this delay, writ counsel withdrew as counsel in 2016 as part of her decision to retire from the practice of law entirely.

Applicant's case is not an isolated incident, but we do not know if it is an island, part of an archipelago, or an entire sub-continent. The Harris County District Court has informed us (informally) that there are an unspecified, but significant number of habeas applications in Harris County that have been delayed for several years, sometimes, as this case demonstrates, even for decades. The Court continues to get new information about these "lost and found" cases (again informally), but we do not know the scope or cause of the problem. How many cases are there? How many cases can be resolved immediately? How many still require record development? How many cases are no longer able to be developed due to the loss of witnesses, attorneys, or even judges? Further, there does not appear to be any systemic response in Harris County to what appears to be a systemic failure in evaluating and forwarding habeas corpus applications to this Court for resolution.

Courts, including this one, have inherent authority to issue writs and orders necessary or proper in the aid of its jurisdiction.[3] Under Article 11.07, sec. 3(d) requires a clerk to immediately transfer to this Court the application, any answers filed, any motions filed, transcripts

---

[3] TEX. GOV'T. CODE § 21.001; *see In re State ex rel. Risinger*, 479 S.W.3d 250, 262 (Tex. Crim. App. 2015) (citing *State v. Patrick*, 86 S.W.3d 592, 601 (Tex. Crim. App. 2002) (Cochran, J., dissenting)); *Morrison v. State*, 845 S.W.2d 882, 905 (Tex. Crim. App. 1992) (Benavides, J., dissenting).

of all depositions and hearings, any affidavits, any other matters such as official records used by the court in resolving issues of fact after the convicting court has made findings of fact.[4]  In 2018, we amended Rule 73.4 of the Rules of Appellate procedure to require clerks handling post-conviction habeas corpus applications to forward documents to this Court as they are entered and forward the writ record to this Court 181 days after it has been received by the State.[5]  I believe this Court should, pursuant to our inherent authority to enter orders necessary to our writ jurisdiction, enter a show cause order and set a hearing for the Harris County District Clerk to explain why the writ record in this case was not forwarded to this Court sooner, and why this has apparently happened in many other cases.  I hope that in doing so, we can collectively get to the bottom of what is going on with these "lost and found" cases in a pro-active and transparent manner.

I am sympathetic to the situation in which the current Harris County District Clerk finds herself.  I do not doubt that there may be many good explanations for the failure in this and the other cases.  But

---

[4] TEX. CODE CRIM. PROC. art. 11.07, sec. 3(d); *Gibson v. Dallas County Dist. Clerk*, 275 S.W.3d 491, 492 (Tex. Crim. App. 2009) (district clerk has no authority to hold an application for a writ of habeas corpus and is under a ministerial duty to forward the application).

[5] TEX. R. APP. P. 73.4.

we need to hear what they are.  I believe the Court should ask the district clerk to provide explanations in a forthright manner before this Court.  That way this Court can get a better understanding of the problems facing Harris County and adjust accordingly.  And if there are holes in our current procedures that need to be plugged going forward, this Court needs to find them.

While my concerns are somewhat alleviated by this Court's decision to remand for the development of a record regarding this problem, I disagree that this is preferrable to a separate show-cause proceeding independent of the handling of the individual writs.  Whatever else can be said of this situation, the fault lies in the system not with the parties, and the parties do not work for us.  It is up to us to sort this out, not them.  Moreover, there is no guarantee that Applicant will still want to pursue his writ application now that he's already served his sentence.  If he decides not to proceed, this Court will have to look for another vehicle to investigate this issue.  Further, this practice will lead to multiple *Rashomon*-like descriptions of the situation each from the viewpoint of individual habeas courts.[6]  It may

---

[6] RASHOMON, (Daiei Films 1950) (motion picture featuring multiple characters giving subjective and even contradictory descriptions of a single event).

also implicitly encourage individual habeas judges to adopt procedures to deal with the issue that conflict with procedures other judges might adopt. And finally, that course of action could subtly suggest that a habeas applicant should have his claim for habeas relief denied under some new theory of "want of prosecution" when the lack of "prosecution" was due to the clerk's failure to submit the application to this Court in a timely fashion. As Bruno Mars famously said, "Don't believe me just watch."[7]

Indeed, this case is already a good example of that. Applicant raises a discrete issue regarding the failure of trial counsel to appeal his possession case. We have affidavits of counsel fleshing out what happened on that point. The habeas court in this case made a finding on the record that trial counsel was ineffective for failing to include the cause number for Applicant's possession case on his notice of appeal. A remand is unnecessary to resolve Applicant's claim.[8]

---

[7] MARK RONSON FEAT. BRUNO MARS, UPTOWN FUNK (Columbia 2014).

[8] We have, in the past, dismissed applications like this one when an applicant's sentence discharges during the life of his application. In those cases, we have done so based upon an application of *Ex parte Harrington*, to essentially hold that Applicant failed to allege collateral consequences of his conviction when he filed his application. *Ex parte Harrington*, 310 S.W.3d 452 (Tex. Crim. App. 2010). And yet, neither Applicant nor those applicants had any reason to allege collateral consequences of their convictions because they were actually serving their respective sentences at the time the application was filed. True, the dismissal of the application under those circumstances does not prevent an applicant from re-filing, but I question whether a white card from this Court dismissing his or her application and citing

So, rather than hold the passage of time against Applicant in this case by remanding for further evidentiary development, I would simply address the merits and grant relief. In this case, the habeas court had affidavits from the attorneys and held an evidentiary hearing at which he found trial counsel was ineffective.[9] I believe that finding is supported by the record. Any answers we need regarding why this case was delayed should be handled through a separate show-cause hearing. There are many more of these cases to come, we should resolve the easy ones when we can.

_____

*Harrington* adequately informs applicants that they can simply start over with a new writ application, let alone explain to them how to fix what was wrong in the first place.

 Given that section 3(c) of Article 11.07 now specifically defines "confinement" as including "any collateral consequences resulting from the conviction" that is the basis of the habeas application, it can be argued that such a pleading requirement for "collateral consequences" should not even be necessary. TEX. CODE CRIM. PROC. art. 11.07, sec. 3(c). Reading this statutory provision as expanding the right to habeas relief beyond specific challenges to "restraint" would necessarily require us to reject arguments for limiting cognizability of claims on a writ of habeas corpus under the theory that habeas corpus is not intended to be a substitute for appeal. *Ex parte Nelson*, 137 S.W.3d 666, 667 (Tex. Crim. App. 2004) ("We have said countless times that habeas corpus cannot be used as a substitute for appeal."). And it would be also be consistent with Article 11.04 of the Code of Criminal Procedure that requires us to interpret every provision of Article 11.07 in a manner most favorably to the person seeking relief. TEX. CODE CRIM. PROC. art. 11.04. If we were to go that route, dismissal of Applicant's writ would be inappropriate because by alleging the existence of his conviction, Applicant necessarily drew attention to the collateral consequences that would inexorably flow from it.

[9] *Ex parte Valdez*, 489 S.W.3d 462, 471 (Tex. Crim. App. 2016) (J. Richardson concurring) (noting "*our Article 11.07 writ process of granting an out-of-time appeal when either the appellate attorney fails to properly file a notice of appeal or there is a 'breakdown in the system' that prevents the filing of a proper notice of appeal*.") (emphasis in the original).

With these thoughts, I dissent to the Court's remand of Applicant's writ and I urge the Court to issue a show cause order regardless of how this case is disposed.

Filed: November 9, 2022

Publish